UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Willis Re Inc.<br><br>    Plaintiff,<br><br>v.<br><br>Paul Herriott,<br><br>    Defendant. | X | Civil Action No.<br><br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

Plaintiff, Wills Re Inc. ("Willis Re"), thorough its undersigned attorneys White and Williams LLP, as and for its Complaint against Defendant Paul Herriott ("Herriott") avers as follows:

## NATURE OF ACTION

1.  Willis Re commences this action against Defendant Paul Herriott for declaratory and injunctive relief related to the enforceability of restrictive covenants which reasonably limit Herriott's ability to use and disclose Willis Re's confidential information and to solicit certain Willis Re clients and employees. Herriott begins new employment on or about January 22, 2021 with TigerRisk Partners, LLC, a direct competitor of Willis Re. Herriott has not confirmed that he will abide by his restrictive covenants. Willis Re therefore believes that Herriott intends to imminently breach his restrictive covenants by wrongfully using Willis Re's confidential information and impermissibly soliciting certain Willis Re clients and employees.

## THE PARTIES

2.  Plaintiff Willis Re is a New York Corporation with a principal place of business located at Brookfield Place, 200 Liberty Street, 7th Floor, New York, NY 10281.

3. Upon information and belief, Defendant Paul Herriott is an adult individual and citizen of the state of California, residing at 6 Old Coach Road, Napa, California 94558.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C §1332(a)(1) because the matter in controversy exceeds the sum of $75,000, exclusive of interests and costs, and because Plaintiff and Defendant are citizens of different states.

5. Plaintiff seeks a declaration of its rights, pursuant to 28 U.S.C. § 2201, to resolve an actual controversy within this Court's diversity jurisdiction.

6. The Court has personal jurisdiction over Defendant because he consented to personal jurisdiction in this District in the Agreements he signed with Willis Re, fully discussed below, and waived any objections thereto. Moreover, he regularly does business in New York State and in this District.

7. Venue is proper in this judicial district because Defendant agreed and consented in the Agreements he signed with Willis Re, fully discussed below, to the exclusive jurisdiction of Courts located within New York County, New York.

## FACTUAL BACKGROUND

8. As a leading reinsurance broker, Willis Re, among other things, secures facultative casualty insurance for its clients. Facultative casualty reinsurance is coverage purchased by a primary casualty insurer to cover a single risk or a block of risks held in the primary casualty insurer's book of business. The insurance company pays an annual premium, and Willis Re, as the broker, receives a percentage of that premium.

9. The nature of the reinsurance and brokerage business is such that client and prospective client identities, preferences, risk tolerances and other similar information is extremely

valuable.  Such information, which allows companies such as Willis Re to serve clients, could also be used by competitors to entice a client away from Willis Re.

10. This information provides Willis Re with a competitive advantage in providing reinsurance brokerage services at competitive pricing to its clients.  Willis Re provides extensive research, information, and training in particular areas of specialty so that employees can meet the needs of its clients to develop optimal risk management solutions.

11. Since May 12, 2003, Defendant Paul Herriott has been employed by Willis Re, based in Willis Re's San Francisco, California office.  Herriott reports to Jim Bradshaw, Chief Executive Officer of Willis Re North America, whose office is located in New York.

12. Willis Re employs Herriott as an Executive Vice President and National Sales Director and he performs reinsurance brokerage services for Willis Re clients in its healthcare segment, which includes, among other things, placing reinsurance requested by insurance clients with reinsurance companies on the best terms available, advising clients on how to structure their reinsurance coverage, managing clients' reinsurance programs, and helping clients process reinsurance claims.

13. Herriott is also the head of sales for Willis Re North America, and he has managed Willis Re North America sales software rollout and usage across North American branches of the online client relationship management tool that Willis Re uses for client development and ongoing care and management of clients. Herriott has managed Willis Re North America's sales support staffing and products (*e.g.*, the Request for Proposal) accessed by all North American branches across Willis Re North America. He has managed Willis Re North America's sales conferences, and tracked and reported on Willis Re's sales "pipeline" across all branch offices, to the North American Executive Committee, and to Willis Re's Global Executive Committee.

14. Through this role, Paul has had unique insights into Willis Re's company strategy and direction. He has participated on a weekly Willis Re North America executive call wherein participants discussed day-to-day management of the business units. Herriott has also participated in multiple meetings each year in New York to address broader core strategies around growth, hiring, investments, sales and operations. His responsibilities at Willis Re have also included maintaining and servicing existing client relationships, managing the profitability of his book of business, and acquiring new clients.

15. By virtue of his position at Willis Re, Herriott was provided with and given access to highly confidential and proprietary information, including trade secrets.

16. To ensure the success of employees like Herriott, Willis Re provided him with the resources necessary to do his job and developed and nurtured these important client relationships with new, existing and potential clients including office space, marketing support, computer systems, administrative, clerical and sales support, research, travel and expense reimbursement, all of which was provided at hundreds of thousands if not millions of dollars in expense to Willis Re.

17. Herriott benefited from Willis Re's advertising, goodwill, name recognition, and promotional marketing.

18. The competitive, confidential and proprietary information gathered and generated by Willis Re through its employees has been compiled over many years at significant expense. To protect these investments, information and customer relationships from unfair competition, Willis Re requires most or all of its employees to enter into agreements that contain reasonable and narrowly tailored restrictive covenants that prohibit the use and disclosure of confidential and proprietary information and restricts the solicitation of certain clients and prospective clients and

the solicitation of employees during employment and for a reasonable period of time post-separation. Such restrictive covenants are accepted and utilized industry-wide as reasonable and necessary to prevent unfair competition. These common restrictions do not prevent employees from working in the industry for other competitors. Rather, they only ensure fair competition through the protection of certain valuable account relationships and confidential information.

19. On January 6, 2021, Herriott, along with nine other Willis Re employees who are members of his team, abruptly and simultaneously resigned from Willis Re by sending notice of his resignation via email to Mr. Bradshaw. A true and accurate copy of that email is annexed hereto as **Exhibit A**. Herriott's last day of employment with Willis Re is January 21, 2021, following expiration of a fifteen (15) day notice period.

20. On or about January 8, 2021, it was publicly announced in the media that Herriott would be joining TigerRisk Partners LLC, a direct competitor of Willis Re, as a reinsurance broker and part of a larger team of nine other reinsurance brokers who are also departing from Willis Re. A true and correct copy of the announcement is annexed hereto as **Exhibit B.**

21. The team's annual book of business for at least twenty Relevant Clients (as defined in his agreements), is in excess of $15 million dollars.

22. Through this action, Willis Re is *not* trying to prevent Herriott from working for TigerRisk Partners, LLC. Rather it is only seeking to enforce the reasonable covenants Herriott agreed to in the agreements he signed.

23. On or about April 2, 2018, and as a condition of an award of stock, Herriott entered into an Agreement of Restrictive Covenants and Other Obligations For Employees In The United States (the "Agreement"), attached as **Exhibit C.**

24. On or about April 1, 2019, and as condition of an additional award of stock, Herriott again entered into the Agreement, attached as **Exhibit D.**

25. On or about April 1, 2020, and as condition of an additional award of stock, Herriott again entered into the Agreement, attached as **Exhibit E.**

26. The Agreements all provide the following with respect to Confidential Information:

> Without the Company's prior written consent, the Associate shall not directly or indirectly, at any time during or after the Associate's employment with any Employer, disclose any Confidential Information and shall use the Associate's best efforts to prevent the taking or disclosure of any Confidential Information to a Competitor, or otherwise, except as reasonably may be required to be disclosed by the Associate in the ordinary performance of his or her duties for Employer or as required by law.

27. The Agreements all further provide with respect to Non-Solicitation:

> [Mr. Herriott] shall not, for the Relevant Period, directly or indirectly for a Competitor or otherwise:
>
> 3.3.1. within the Relevant Area, solicit any Relevant Client or Relevant Prospect for the purposes of any Business which competes or will compete or seeks to compete with the Restricted Group;
>
> 3.3.2. within the Relevant Area, accept, perform services for, or deal with any Relevant Client or Relevant Prospect for the purposes of any Business which competes or will compete or seeks to compete with the Restricted Group;
>
> 3.3.3. solicit for employment or entice away from the Restricted Group any Key Personnel; or
>
> 3.3.4. employ or engage or endeavour to employ or engage any Key Personnel.

28. The Agreements further provide the following key definitions, among others:

> "**Confidential Information**" shall mean all trade secrets and non-public information concerning the financial data, strategic business plans, and other non-public, proprietary, and confidential information of the Restricted Group. Confidential Information includes, but is not limited to, the following information: identities of Relevant Clients and Relevant Prospects; identities of companies from which any Subsidiary obtains insurance coverage for Relevant Clients and Relevant Prospects; policy terms, conditions, rates and expiration dates pertaining to Relevant Clients and Relevant Prospects; risk characteristics of Relevant Clients and Relevant Prospects; and non-public information of the Restricted Group concerning insurance

markets for particular risks. Confidential Information shall not include information that is within public domain, provided that Associate was not responsible, directly or indirectly, for such information entering the public domain without the Restricted Group's consent.

"**Key Personnel**" shall mean any person who is at the date the Associate ceases to be an employee of Employer or was (i) at any time during the period of twelve (12) months prior to that date employed by the Restricted Group, (ii) an employee with whom Associate had dealings, and (iii) employed by or engaged in the Business in a managerial capacity, or was an employee with insurance, reinsurance or other technical expertise.

"**Relevant Area**" shall mean the counties, parishes, districts, municipalities, cities, metropolitan regions, localities and similar geographic and political subdivisions, within and outside of the United States of America, in which the Employer, the Company or any of its Subsidiaries has carried on Business in which the Associate has been involved or concerned or working on at any time during the period of twelve (12) months prior to the date on which the Associate ceases to be employed by Employer.

"**Relevant Client**" shall mean any person, firm or company who or which at any time during the period of twelve (12) months prior to the date on which the Associate ceases to be employed by Employer is or was a client or customer of the Employer, the Company or any of its Subsidiaries or was in the habit and/or practice of dealing under contract with the Employer, the Company or any of its Subsidiaries and with whom or which the Associate had dealings related to the Business or for whose relationship with the Employer, the Company or any of its Subsidiaries the Associate had responsibility at any time during the said period.

"**Relevant Period**" shall mean the period of twenty four (24) months following the date on which the Associate ceases to be employed by Employer.

"**Relevant Prospect**" shall mean any person, firm or company who or which at any time during the period of six (6) months prior to the date on which the Associate ceases to be employed by Employer was an active prospective client of the Employer, the Company or any of its Subsidiaries with whom or with which the Associate had dealings related to the Business (other than in a minimal and non-material way).

29. With respect to choice of law, the Agreements all provide:

    This [Agreement] shall be governed by and construed in accordance with the laws of the state of New York, without regard to its conflicts of law principles.

30. With respect to the forum for disputes, the Agreements all provide:

    Any suit, action or proceeding arising out of or relating to this RCA shall only be brought in the State and Federal Courts located in the County of New York, State of New York and the Parties hereto irrevocably and unconditionally submit accordingly to the exclusive jurisdiction of such courts for the purpose of any such

suit, action or proceeding. The Associate hereby irrevocably and unconditionally waives any objections he or she may now have or hereafter have to the laying of the venue of any suit, action or proceeding arising out of or relating to this RCA in the foregoing courts. The Associate further acknowledges that for purposes of N.Y.C.P.L.R. 327(b) and N.Y. G.O.L. Section 5-1402, the value of the Plan is in excess of One Million Dollars ($1,000,000) and the Associate hereby further irrevocably and unconditionally waives any claim that any such suit, action or proceeding brought in the foregoing courts has been brought in an inconvenient forum.

31. On January 11, 2021, Willis Re's Chief Counsel, Sheri E. Bloomberg, reminded Defendant via letter of his contractual obligations to Willis Re under the Agreements, attached as **Exhibit F**.

32. On January 14, 2021, Willis Re's Chief Counsel, Sheri E. Bloomberg, again reminded Defendant via email of his contractual obligations to Willis Re under the Agreements, attached as **Exhibit G**.

33. On January 20, 2021, Willis Re's Chief Counsel, Sheri E. Bloomberg, again reminded Herriott via letter of his duties owed to Willis Re under the Agreements and requested that Herriott confirm in writing by 5:00 p.m. EST on January 20, 2021 his agreement to fulfill these duties, attached as **Exhibit H**.  At the time of filing of this Complaint, Willis Re has not received the requested confirmation from Herriott.

34. On information and belief, Herriott intends to breach the Agreements by soliciting Relevant Clients and Prospects in an effort to induce the movement of those clients' business to TigerRisk Partners, LLC, his new employer.

### COUNT I
### DECLARATORY JUDGMENT

35. Willis Re hereby incorporates by reference, as if fully set forth again, each allegation of paragraphs 1-34 and makes them a part hereto as though set forth more particularly herein.

36. An actual controversy has arisen and now exists between Willis Re and Defendant concerning whether the Agreements outlined above are valid and enforceable under New York law.

37. Willis Re thus desires and requests that a judicial determination be made, pursuant to 28 U.S.C. § 2201, that the Agreements are valid and enforceable under New York law and that Herriott is barred from soliciting Relevant Clients, Relevant Prospects, Restricted Groups or Key Personnel during the two year period following the effective date of his separation from employment by Willis Re, and from retaining, using or disclosing to third parties any of Willis Re's trade secrets or confidential information.

38. A judicial determination of the parties' rights and duties is necessary and appropriate at this time and under these circumstances to resolve the controversy between the parties.

## COUNT II
## INJUNCTIVE RELIEF

39. Willis Re hereby incorporates by reference, as if fully set forth again, each allegation of paragraphs 1-38 and makes them a part hereto as though set forth more particularly herein.

40. By virtue of the foregoing, Willis Re has demonstrated that it will succeed on the merits and that a balancing of equities favors issuance of an injunction against Herriott.

41. Unless Herriott is permanently enjoined from soliciting Willis Re's customers and from using or disclosing Willis Re's confidential information and trade secrets, Willis Re will be irreparably harmed by:

(a) disclosure of trade secrets, client lists, and other confidential information that is solely the property of Willis Re;

(b) loss of confidentiality of clients' records and financial dealings and trust of clients, loss of goodwill, and loss of business reputation;

(c) threat to enforcement of reasonable contracts; and,

(d) present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable.

42. Willis Re has no remedy at law.

43. As a consequence of the foregoing, Willis Re seeks an order enjoining Herriott:

(A) from, within the Relevant Area, directly or indirectly soliciting any Relevant Client or Relevant Prospect for the purposes of any Business which competes or will compete or seeks to compete with the Restricted Group;

(B) from, within the Relevant Area, accepting, directly or indirectly performing services for, or dealing with any Relevant Client or Relevant Prospect for the purposes of any Business which competes or will compete or seeks to compete with the Restricted Group;

(C) from directly or indirectly soliciting for employment or enticing away from the Restricted Group any Key Personnel;

(D) from employing or engaging or endeavoring to employ or engage any Key Personnel;

      (E) from directly or indirectly performing or supervising the performance of services or provision of products of the type sold or provided by him while employed by Willis Re on behalf of any Relevant Clients or Relevant Prospects;

      (F) from directly or indirectly soliciting for employment or enticing away from the Restricted Group any Key Personnel or the employing or endeavoring to employ or engage any Key Personnel;

      (G) from using, disclosing, or transmitting for any purpose, including the solicitation of business, the information contained in the records of Willis Re, including, but not limited to, the name, addresses, and financial information of Willis Re or any Willis Re client or prospective client or using, disclosing or transmitting for any purpose, including the solicitation of business, any Confidential Information as defined in the Agreements;

      (H) from disclosing or using for their own purpose, or for the purpose of any other person or entity, any of Willis Re's trade secrets or other Confidential Information (as defined in the Agreements);

      (I) from destroying, erasing, or otherwise making unavailable for further proceedings in this matter, or in any arbitration proceeding between the parties, any records or documents (including data or information maintained in computer media) in Herriott's possession or control which were obtained from or contain information derived from any of Willis Re's records, which pertain to Willis Re, Willis Re's employees, clients, or prospective clients, or which relate to any of the events alleged in this action;

      (J) to return to Willis Re's counsel any and all records or information pertaining to Willis Re, Willis Re's Confidential Information or trade secrets, whether in the original, copies, computerized, handwritten, or any other form, and purge such information from

their or its possession, custody, or control, within 24 hours of the Court's Order provided, however, that any information so purged shall be printed and saved to a computer disk or similarly accessible and readable recording device prior to purging and be returned to Willis Re pursuant to this paragraph; and,

(K) other and further ways necessary to bring Herriott into full and complete compliance and conformance with his contractual obligations under the Agreements.

**WHEREFORE**, Willis Re Inc. respectfully requests that judgment be made and entered declaring, pursuant to 28 U.S.C. § 2201, that Defendant Paul Herriott is contractually barred from directly or indirectly soliciting Relevant Clients, Relevant Prospects, or Key Personnel during the two year period following Defendant's separation from employment by Willis Re, and from retaining, using or disclosing to third parties any of Willis Re's trade secrets or confidential information, and awarding Willis Re such other and further relief as the Court deems just, equitable and proper, including, but not limited to, Herriott's specific performance of his obligations under the Agreements and the injunctive relief outlined above.

Dated: New York, New York
       January 20, 2021

**WHITE AND WILLIAMS LLP**

By: *[signature]*
Scott H. Casher, Esq.
George C. Morrison, Esq.
Times Square Tower
7 Times Square, Suite 2900
New York, New York 10036
*Attorneys for Plaintiff, Willis Re Inc.*

26477467v.1