**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WILLIS TOWERS WATSON PUBLIC LIMITED COMPANY and WILLIS RE INC. | : : : : |
| Plaintiffs, | : : 21-cv-00487 |
| v. | : : |
| PAUL HERRIOTT | : : : |
| Defendant. | : : : : : |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION**

By:

Scott H. Casher, Esquire
George C. Morrison, Esquire
White and Williams LLP
Times Square Tower
7 Times Square, Suite 2900
New York, NY 10036
*Attorneys for Plaintiffs.*

26523171v.5

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS .........................................................................................2

ARGUMENT ...........................................................................................................10

**I.     THE RCA REQUIRES APPLICATION OF NEW YORK LAW AND EXCLUSIVE VENUE IN NEW YORK ...................................................10**

**II.    WILLIS IS ENTITLED TO A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION ...........................................................11**

    A.   Willis is Likely to Succeed on the Merits of its Claim that Herriott Breached the Forum Selection Clause in His RCA. .............................12

    B.   Willis is Likely to Succeed on the Merits of its Claims that the RCA is Valid and Enforceable Under New York Law.....................................13

        a.   The Restrictions are Necessary to Protect Willis' Legitimate Interests .................................................................................14

            (1)   The Restrictions are Necessary to Protect Willis' Client Base ..........................................................................................14

        b.   The Restrictions are Reasonable in Time and Geographic Scope ............16

        c.   The Restrictions Do Not Unduly Burden Herriott....................................17

        d.   Herriott Breached the Terms of His RCA and Will Continue To Do So Absent Injunctive Relief .............................................................18

    C.   Willis Will Suffer Irreparable Harm Absent An Injunction. ................................19

        a.   The California Action. ..............................................................................19

        b.   The Loss of Clients and Customer Goodwill............................................21

    D.   The Balance Of the Equities Favors The Preliminary Injunction.........................22

    E.   The Preliminary Injunction Is In New York's Public Interest..............................23

**III.   ANY BOND THE COURT ORDERS AS SECURITY FOR INJUNCTIVE RELIEF SHOULD BE NOMINAL................................................................24**

**IV.    PLAINTIFFS ARE ENTITLED TO EXPEDITED DISCOVERY ...........................25**

CONCLUSION.........................................................................................................25

26523171v.5

# TABLE OF AUTHORITIES

**Page(s)**

CASES

159 MP Corp. v Redbridge Bedford, LLC,
  33 N.Y.3d 353 (N.Y. Ct. App. 2019) ........................................................................23

AEI Life LLC v. Lincoln Ben. Life Co.,
  892 F.3d 126 (2d Cir. 2018) ......................................................................................11

Am. Civil Liberties Union v. Clapper,
  804 F.3d 617 (2d Cir. 2015) ......................................................................................12

AT&T v. Milgo Elec. Corp.,
  416 F. Supp. 951 (S.D.N.Y) (1976) ..........................................................................21

Atl. Marine Constr. Co. v. United States Dist. Court,
  571 U.S. 49 (2013) .....................................................................................................23

Ayyash v. Bank Al-Madina,
  233 F.R.D. 325 (S.D.N.Y. 2005) ...............................................................................25

Babcock & Wilcox Co. v. Control Components, Inc.,
  614 N.Y.S.2d 678 (N.Y. Sup. Ct. 1993) ...................................................................24

BDO Seidman v. Hirshberg,
  93 N.Y.2d 382 (1999) ..........................................................................................14, 16

Benham Jewelry Corp. v. Aron Basha Corp.,
  No. 97-Civ.-3841 (RWS), 1997 WL 639037 (S.D.N.Y. Oct. 14, 1997) ................25

Bernstein v. Wysoki,
  77 A.D.3d 241 (N.Y. App. Div. 2010) ......................................................................13

BP Prods. N. Am. Inc. v Motor Parkway Amoco,
  2006 U.S. Dist. LEXIS 98029 (E.D.N.Y. Aug. 21, 2006) .......................................22

Brooke Grp. Ltd. v. JCH Syndicate 488,
  663 N.E.2d 635 (N.Y. 1996) .....................................................................................22

Capstone Logistics Holdings, Inc. v. Navarrete,
  2018 U.S. Dist. LEXIS 216940 (S.D.N.Y. Oct. 25, 2018) ......................................11

Chemoff Diamond & Co. v. Fitzmaurice, Inc.,
  234 A.D.2d 200, 651 N.Y.S.2d 504 (1st Dep't 1996) ..............................................17

Citigroup Global Mkts., Inc. v. Mun. Elec. Auth.,
    2014 U.S. Dist. LEXIS 110511 (S.D.N.Y.).....................................................20, 21, 24

DeWitt Stern Grp., Inc. v. Eisenberg,
    2013 U.S. Dist. LEXIS 78598 (S.D.N.Y. June 3, 2013..........................................15

Digital Sin, Inc. v. John Doe, 1-176,
    279 F.R.D. 239 (S.D.N.Y. 2012) ..........................................................................25

Estee Lauder Cos. v. Batra,
    430 F. Supp. 2d 158 (S.D.N.Y. 2006)...................................................................24

General Protecht Group, Inc. v. Leviton Mfg. Co.,
    651 F.3d 1355 (U.S. Ct. App. 2011)................................................13, 19, 20, 24

Global Telesystems. Inc. v. KPNQwest. N.V.,
    151 F. Supp. 2d 478 (S.D.N.Y. 2001) ("New York recognizes the
    enforceability of covenants not to solicit employees").........................................18

Gottwald v. Sebert,
    161 A.D.3d 679, 79 N.Y.S.3d 7 (1st Dep't 2018) ...............................................11

Int'l Dairy Foods Ass'n v. Amestoy,
    92 F.3d 67 (2d Cir. 1996)......................................................................................14

Int'l Fashion Prods., B.V. v. Calvin Klein, Inc.,
    No. 09-CV-0982, 1995 U.S. Dist. LEXIS 2598, 1995 WL 92321 (S.D.N.Y.
    Mar. 7, 1995).........................................................................................................20

J.P. Morgan Secs. LLC v. Quinnipiac Univ.,
    2015 U.S. Dist. LEXIS 67135 (S.D.N.Y.).......................................................20, 21

Johnson Controls, Inc. v. A.P.T. Critical Sys,
    323 F.Supp. 2d 525 (S.D.N.Y. 2004)................................................14, 16, 21, 22

L.V:M. v. Lloyd,
    318 F. Supp. 3d 601 (S.D.N.Y. 2018)..................................................................23

Lazare Kaplan Int'l Inc. v. KBC Bank NV.,
    337 F. Supp. 3d 274 (S.D.N.Y. 2018)..................................................................24

M/S Bremen v. Zapata Off-Shore Co.,
    407 U.S. 1 (1972).............................................................................................12, 23

Malcolm Pimie, Inc, v. Werthman,
    280 A.D.2d 934 (4th Dep't 2001).........................................................................17

26523171v.5

Mallory Factor Inc. v. Schwartz,
146 A.D.2d 465 (N.Y. App. Div. First Dep't 1989) ................................................................18

Mallory Factor, Inc. v. Werthman,
146 A.D.2d 463 (1st Dep't. 1989) ........................................................................................17

Marsh USA Inc. v. Karasaki,
2008 U.S. Dist. LEXIS 90986 ......................................................12, 14, 15, 16, 17, 18, 21, 22

Marsh USA Inc. v. Schuhriemen,
183 F. Supp. 3d 529 (S.D.N.Y. 2016)..........................................................................12, 15, 22

Mercer Health & Benefits LLC v. DiGregorio,
307 F. Supp. 3d 326 (S.D.N.Y. 2018).........................................................................14, 15, 17

Ministers & Missionaries Benefit Bd. v. Snow,
26 N.Y.3d 466, 25 N.Y.S.3d 21 (N.Y. 2015) .........................................................................11

New York Real Estate Institute. Inc. v. Edelman,
42 A.D.3d 321, 839 N.Y.S.2d 488 (1st Dep't 2007) ..............................................................17

New York v. Actavis PLC,
787 F.3d 638 (2d Cir. 2015)..................................................................................................12

Phillips v. Audio Active Ltd.,
494 F.3d 378 (2d Cir. 2007)..................................................................................................13

Renaissance Nutrition. Inc v. Kurtz,
2012 U.S. Dist. LEXIS 2490 (W.D.N.Y.) ...............................................................................16

Sanford L.P. v. Esselte AB,
2015 U.S. Dist. LEXIS 193868 (S.D.N.Y.)..............................................................................20

Silipos, Inc. v. Bickel,
2006 WL 2265055 (S.D.N.Y. Aug. 8, 2006)...........................................................................14

Solomon Agency Corp. v. Choi,
2016 U.S. Dist. LEXIS 75949 (E.D.N.Y)................................................................................15

Sterling v. Deutsche Bank Nat'l Tr. Co.,
2006-FF6, 368 F. Supp. 3d 723 (S.D.N.Y. 2019)....................................................................11

Stewart Org., Inc. v. Ricoh Corp.,
487 U.S. 22 (1988)...............................................................................................................11

Tanzanian Royalty Expl. Corp. v. Crede CG III, Ltd.,
2019 U.S. Dist. LEXIS 50310 (S.D.N.Y. Mar. 26, 2019) ........................................................11

Tex. Instruments, Inc. v. Tessera, Inc.,
  231 F.3d 1325 (Fed. Cir. 2000)................................................................13

Ticor Title Ins. Co. v. Cohen,
  173 F.3d 63 (2d Cir. 1999).................................................14, 16, 21, 22

Tourtellot v. Harza Architects, Eng'rs & Consti: Managers,
  55 A.D.3d 1096 (N.Y. App. Div. 2008) ................................................13

USI Ins. Servs. LLC v. Miner,
  801 F. Supp. 2d 175 (S.D.N.Y. 2011)...................................................15

Veraldi v. Amer, Analytical Labs, Inc.,
  271 A.D.2d 599, 706 N.Y.S.2d 158 (2d Dep't 2000) ..........................18

Verizon Communications, Inc, v. Pizzirani,
  462 F. Supp. 2d 648 (E.D.P.A. 2006) ...................................................24

Welsbach Elec. Corp. v. MasTec N. Am., Inc.,
  7 N.Y.3d 624, 825 N.Y.S.2d 692 (N.Y. 2006) ....................................11

Williams v. City of New York,
  2018 WL 1785486 (E.D.N.Y. Apr. 13, 2018) ......................................14

Willis of New York, Inc, v. DeFelice,
  299 A.D.2d 240 (1st Dep't 2002) .........................................................16

Winter v. Natural Res. Def. Council, Inc.,
  555 U.S. 7 (2008)..............................................................................12, 22

STATUTES

N.Y.. Gen. Oblig. Law § 5-1402...................................................7, 8, 12, 24

OTHER AUTHORITIES

Fed. R. Civ. P. 65(c) ............................................................................24, 25

## PRELIMINARY STATEMENT

Plaintiffs Willis Towers Watson Public Limited Company ("WTW") and Willis Re Inc. ("Willis Re") (collectively, "Willis")[1] submit this memorandum of law in support of their emergency motion, by order to show cause, for a temporary restraining order and a preliminary injunction. In their motion, Willis requests that this Court issue an Order enjoining Paul D. Herriott ("Herriott"), a former employee of Willis Re, from prosecuting an action in California, in which he seeks injunctive and declaratory relief against Willis, in violation of the exclusive New York forum selection clause, and New York choice of law clause, contained in a non-solicitation restrictive covenant agreement ("RCA") that Herriott signed during his employment with Willis Re.  Willis further requests that this Court issue an Order enjoining Herriott from violating the non-solicitation provisions in his RCA by soliciting and servicing certain Willis Re clients with his new employer, TigerRisk Partners, LLC ("TigerRisk Partners") - a significant and direct competitor of Willis Re.

On January 6, 2021, Herriott, along with nine other Willis Re employees who are members of Herriott's reinsurance brokerage team, abruptly and simultaneously resigned from Willis Re by sending notice of his resignation via email. Herriott's last day of employment with Willis Re was January 21, 2021. Herriott joined TigerRisk Partners on January 22, 2021 as a reinsurance broker and part of a larger team of nine other reinsurance brokers who have already departed or are about to depart from Willis Re. The team's annual book of business is in excess of $15 million dollars.  Despite agreeing to narrowly tailored covenants regarding certain clients and agreeing to have all disputes under his RCA decided *exclusively* by the courts in New York, Herriott is blatantly violating his RCA by seeking an order from a California court to declare his RCA unenforceable to enable him to impermissibly move certain Willis Re clients to his new employer.

---

[1] Willis Re is an indirect subsidiary of WTW.

On January 20, 2021, Willis Re filed a Complaint For Declaratory and Injunctive Relief with this Court seeking to declare the above referenced RCA valid and enforceable.  See Complaint For Declaratory and Injunctive Relief, ECF No. 1.  Despite this pending action and the exclusive New York forum selection clause contained in the RCA, Herriott and his new employer, TigerRisk Partners, LLC, commenced an action on January 22, 2021 in the Superior Court of California, County of San Francisco against Willis seeking injunctive relief and a declaration that the very same RCA provisions are void and unenforceable.  Moreover, despite the RCA containing a New York choice of law provision, Herriott and TigerRisk Partners' California action seeks to invalidate the covenants in the RCA under California law and not New York law.

Willis removed the California Action to the Northern District of California.  Absent emergency intervention from this Court, Herriott will continue to prosecute the same legal issues in California in clear violation of his RCA.  As a result, Willis will be subject to burdensome, fast paced, and duplicative litigation in a state outside of the bargained-for jurisdiction.  As more fully discussion below, Willis will succeed on the merits of its claims and will continue to sustain irreparable harm unless Herriott is enjoined from prosecuting the claims in California.  Under these circumstances, a temporary restraining order and preliminary injunction is warranted and Herriott should be enjoined from further prosecuting the California Action.

## STATEMENT OF FACTS

As a leading reinsurance broker, Willis Re, among other things, secures treaty reinsurance for its clients (Bradshaw Decl. at ¶ 3).[2]  Treaty casualty reinsurance is coverage purchased by primary casualty insurers to cover a block of risks held in the primary casualty insurer's book of business. Id.  The insurance company pays an annual premium, and Willis Re, as the broker, receives a percentage

---

[2] The facts set forth herein are taken from the January 28, 2021 Declaration of James Bradshaw ("Bradshaw Decl.").

26523171v.5

of that premium.  Id.  The nature of the reinsurance and brokerage business is such that client and prospective client's identities, preferences, risk tolerances and other similar information is extremely valuable. Id. at ¶ 4.  Such information, which allows companies such as Willis Re to serve clients, could also be used by competitors to entice a client away from Willis Re.  Id.  This information provides Willis Re with a competitive advantage in providing reinsurance brokerage services at competitive pricing to its clients.  Id. at ¶ 5.  Willis Re provides extensive research, information, and training in particular areas of specialty so that employees can meet the needs of its clients to develop optimal risk management solutions.  Id.

From May 12, 2003 to January 21, 2021, Herriott was employed by Willis Re, based in Willis Re's San Francisco, California office.  Id. at ¶ 6.  From 2010 to January 21, 2021, Herriott reported to James Bradshaw, the Chief Executive Officer of Willis Re. Id. at ¶¶ 2, 6.  Willis Re employed Herriott as an Executive Vice President and National Sales Director. Id.  at ¶ 7.  He was a member of the North American Executive committee which establishes and implements sales and client management strategies across North America.  Id.  His duties also included reinsurance brokerage services for Willis Re clients in its healthcare and professional liability segments, which includes, among other things, placing reinsurance requested by insurance clients with reinsurance companies on the best terms available, advising clients on how to structure their reinsurance coverage, marketing clients' reinsurance programs to reinsurers, managing clients' reinsurance programs and helping clients process reinsurance claims.  Id.

Herriott was also the head of sales for Willis Re in North America, and has managed Willis Re sales software rollout and usage across North American branches of the online client relationship management tool that Willis Re uses for client development and ongoing care and management of clients.  Id. at ¶ 8.  Herriott managed Willis Re sales support staffing and products (e.g., Request for Proposals) accessed by all branches across Willis Re in North America.  Id.  He has also managed

Willis Re sales conferences, and tracked and reported on Willis Re's sales "pipeline" across all branch offices in North America, to the North American Executive Committee, and to Willis Re's Global Executive Committee. Id.

Through his many senior roles, Herriott had unique insights into Willis Re's strategy and direction. Id. at ¶ 9. He participated on a weekly Willis Re executive call wherein participants discussed day-to-day management of the business units in North America. Id. Herriott also participated in multiple meetings in New York to address broader core strategies around growth, hiring, investments, sales and operations. Id. His responsibilities at Willis Re also included maintaining and servicing existing client relationships, managing the profitability of his book of business, and acquiring new clients. Id.

By virtue of his position at Willis Re, Herriott was provided with and given access to highly confidential and proprietary information, including trade secrets. Id. at ¶ 10. To ensure the success of employees like Herriott, Willis Re provided him with the resources necessary to do his job and develop and nurture these important client relationships with new, existing and potential clients including office space, marketing support, computer systems, administrative, clerical and sales support, research, travel and expense reimbursement, all of which was provided at hundreds of thousands if not millions of dollars in expense to Willis Re. Id. at ¶ 11.

Herriott benefited from Willis Re's advertising, goodwill, name recognition, and promotional marketing. Id. at ¶ 12. The competitive, confidential and proprietary information gathered and generated by Willis Re through its employees has been compiled over many years at significant expense. Id. at ¶ 13. To protect these investments, information and customer relationships from unfair competition, Willis Re requires most or all of its employees to enter into agreements that contain reasonable and narrowly tailored restrictive covenants that prohibit the use and disclosure of confidential and proprietary information and restricts the solicitation of certain clients and prospective

-4-

clients and the solicitation of employees during employment and for a reasonable period of time post-separation.  Id.  Such restrictive covenants are accepted and utilized industry-wide as reasonable and necessary to prevent unfair competition.  Id.  These common restrictions do not prevent employees from working in the industry for other competitors.  Id.  Rather, they only ensure fair competition through the protection of certain valuable account relationships and confidential information.  Id.  Upon information and belief, Herriott's new employer, Tiger Risk Partners LLC, utilizes similar restrictions in its employment agreements.  Id.

On January 6, 2021, Herriott, along with nine other Willis Re employees who are members of his team, abruptly and simultaneously resigned from Willis Re by sending notice of his resignation via email to Bradshaw.  Id. at ¶ 15.[3]  Herriott's last day of employment with Willis Re was January 21, 2021, following expiration of a fifteen (15) day notice period.  Id.  On or about January 8, 2021, it was publicly announced in the media that Herriott would be joining TigerRisk Partners LLC, a direct competitor of Willis Re, as a reinsurance broker and part of a larger team of nine other reinsurance brokers who have already departed or are about to depart from Willis Re.  Id. at ¶ 16.[4]  Herriott started work at TigerRisk Partners on January 22, 2021.  Id.  The team's annual book of business for Relevant Clients (as defined in their agreements), is in excess of $15 million dollars.  Id. at ¶ 17.

As a condition of an award of extraordinary compensation[5] offered only to select employees, Herriott entered into an RCA with WTW, which was comprised of the following: (1) an April 2, 2018 Agreement of Restrictive Covenants and Other Obligations For Employees In The United States (id. at ¶ 19)[6]; an April 1, 2019 Agreement of Restrictive Covenants and Other Obligations For Employees

---

[3] A true and accurate copy of that email is annexed to the Bradshaw Decl. as **Exhibit A**.
[4] A true and correct copy of the announcement is annexed to the Bradshaw Decl. as **Exhibit B.**
[5] The compensation award included stock with a current value in excess of $450,000.
[6] A true and accurate copy is annexed to the Bradshaw Decl. as **Exhibit C**.

In The United States (id. at ¶ 20)[7]; and (3) an April 1, 2020 Agreement of Restrictive Covenants and Other Obligations For Employees In The United States (id. at ¶ 21).[8]

The RCA provides the following with respect to Confidential Information:

> Without the Company's prior written consent, the Associate shall not directly or indirectly, at any time during or after the Associate's employment with any Employer, disclose any Confidential Information and shall use the Associate's best efforts to prevent the taking or disclosure of any Confidential Information to a Competitor, or otherwise, except as reasonably may be required to be disclosed by the Associate in the ordinary performance of his or her duties for Employer or as required by law.

The RCA does not prevent Herriott from working for a competitor like Tiger Risk, but further provides with respect to Non-Solicitation:

> [Mr. Herriott] shall not, for the Relevant Period, directly or indirectly for a Competitor or otherwise:
>
> 1.1.1. within the Relevant Area, solicit any Relevant Client or Relevant Prospect for the purposes of any Business which competes or will compete or seeks to compete with the Restricted Group;
>
> 1.1.2. within the Relevant Area, accept, perform services for, or deal with any Relevant Client or Relevant Prospect for the purposes of any Business which competes or will compete or seeks to compete with the Restricted Group;
>
> 1.1.3. solicit for employment or entice away from the Restricted Group any Key Personnel; or
>
> 1.1.4. employ or engage or endeavour to employ or engage any Key Personnel.

The RCA further provides the following key definitions, among others:

> "**Confidential Information**" shall mean all trade secrets and non-public information concerning the financial data, strategic business plans, and other non-public, proprietary, and confidential information of the Restricted Group. Confidential Information includes, but is not limited to, the following information: identities of Relevant Clients and Relevant Prospects; identities of companies from which any Subsidiary obtains insurance coverage for Relevant Clients and Relevant Prospects; policy terms, conditions, rates and expiration dates pertaining to Relevant Clients and Relevant Prospects; risk characteristics of Relevant Clients and Relevant Prospects; and non-public information of the Restricted Group concerning insurance markets for particular risks. Confidential Information shall not include information that is within public domain, provided that Associate was not responsible, directly or indirectly, for such information entering the public domain without the Restricted Group's consent.

---

[7] A true and accurate copy is annexed to the Bradshaw Decl. as **Exhibit D**.
[8] A true and accurate copy is annexed to the Bradshaw Decl. as **Exhibit E**.

26523171v.5

"**Key Personnel**" shall mean any person who is at the date the Associate ceases to be an employee of Employer or was (i) at any time during the period of twelve (12) months prior to that date employed by the Restricted Group, (ii) an employee with whom Associate had dealings, and (iii) employed by or engaged in the Business in a managerial capacity, or was an employee with insurance, reinsurance or other technical expertise.

"**Relevant Area**" shall mean the counties, parishes, districts, municipalities, cities, metropolitan regions, localities and similar geographic and political subdivisions, within and outside of the United States of America, in which the Employer, the Company or any of its Subsidiaries has carried on Business in which the Associate has been involved or concerned or working on at any time during the period of twelve (12) months prior to the date on which the Associate ceases to be employed by Employer.

"**Relevant Client**" shall mean any person, firm or company who or which at any time during the period of twelve (12) months prior to the date on which the Associate ceases to be employed by Employer is or was a client or customer of the Employer, the Company or any of its Subsidiaries or was in the habit and/or practice of dealing under contract with the Employer, the Company or any of its Subsidiaries and with whom or which the Associate had dealings related to the Business or for whose relationship with the Employer, the Company or any of its Subsidiaries the Associate had responsibility at any time during the said period.

"**Relevant Period**" shall mean the period of twenty four (24) months following the date on which the Associate ceases to be employed by Employer.

"**Relevant Prospect**" shall mean any person, firm or company who or which at any time during the period of six (6) months prior to the date on which the Associate ceases to be employed by Employer was an active prospective client of the Employer, the Company or any of its Subsidiaries with whom or with which the Associate had dealings related to the Business (other than in a minimal and non-material way).

With respect to choice of law, the RCA provides:

This [Agreement] shall be governed by and construed in accordance with the laws of the state of New York, without regard to its conflicts of law principles.

With respect to the forum for disputes, the RCA provides:

Any suit, action or proceeding arising out of or relating to this RCA shall only be brought in the State and Federal Courts located in the County of New York, State of New York and the Parties hereto irrevocably and unconditionally submit accordingly to the exclusive jurisdiction of such courts for the purpose of any such suit, action or proceeding. The Associate hereby irrevocably and unconditionally waives any objections he or she may now have or hereafter have to the laying of the venue of any suit, action or proceeding arising out of or relating to this RCA in the foregoing courts. The Associate further acknowledges that for purposes of N.Y.C.P.L.R. 327(b) and N.Y. G.O.L. Section 5-1402, the value of the Plan is in excess of One Million Dollars ($1,000,000) and the Associate hereby further irrevocably and unconditionally waives

any claim that any such suit, action or proceeding brought in the foregoing courts has been brought in an inconvenient forum.

On January 11, 2021, Willis Re's Chief Counsel, Sheri E. Bloomberg, reminded Herriott, via letter, of his contractual obligations to Willis under the RCA. Id. at ¶ 27.[9]  On January 14, 2021, Bloomberg again reminded Herriott, via email, of his contractual obligations to Willis under the RCA. Id. at ¶ 28.[10]  On January 20, 2021, Bloomberg again reminded Herriott, via letter, of his duties owed to Willis under the RCA and requested that Herriott confirm in writing by 5:00 p.m. EST on January 20, 2021 his agreement to fulfill these duties. Id. at ¶ 29.[11]  Willis Re received a vague response from Herriott and not a clear confirmation that he would abide by his restrictive covenants. Id. On January 20, 2021, Willis Re filed its Complaint for Declaratory and Injunctive Relief with this Court.[12]  The same day, on January 20, 2021, Willis, through its counsel, notified TigerRisk Partners, via letter and email, of the above letters and agreements and the Complaint filed on January 20, 2021 in this action and provided TigerRisk Partners with copies of the same. Id. at ¶ 30.[13]  On January 21, 2021, Willis Re's Chief Counsel, Sheri E. Bloomberg, again requested via letter that Herriott clarify and confirm that he will be adhering to the covenants in the RCA.  Id. at ¶ 31.[14]

Instead of responding to Willis Re to clarify and confirm that he will be adhering to the covenants in the RCA, and instead of petitioning this Court for relief as required by the RCA, Herriott and TigerRisk, represented by the same counsel, filed a complaint on January 22, 2021 -- two days after the action before this Court was commenced -- in the Superior Court of the State of California, County of San Francisco, CGC-21-589171 (the "California Action") against Willis. Id. at ¶ 32.  Willis

---

[9] A true and accurate copy of the letter is annexed to the Bradshaw Decl. as **Exhibit F**.

[10] A true and accurate copy of the email is annexed to the Bradshaw Decl. as **Exhibit G**.

[11] A true and accurate copy of the letter is annexed to the Bradshaw Decl. as **Exhibit H**.

[12] Declaration of Scott H. Casher, dated January 27, 2021 ("Casher Decl.").

[13] A true and accurate copy of the letter and emails to counsel for TigerRisk Partners, LLC is annexed to the Casher Decl. as **Exhibit A**.

[14] A true and accurate copy of the email is annexed to the Bradshaw Decl. as **Exhibit J**.

filed their Notice of Removal timely, removing the action to the United States District Court, Northern District of California. Id. at ¶ 33.[15]  By filing the California Action against Willis, Herriott has materially breached the RCA. Id. at ¶ 34.  Willis will be seeking to have that impermissible California Action dismissed because all disputes under the RCA *must* be brought in New York.  This Court therefore can and should decide all disputes regarding the RCA.

Permitting the California Action to proceed in direct violation of the RCA will require that Willis simultaneously litigate in multiple jurisdictions claims based on the same set of underlying facts.  Permitting the California Action to proceed will also cause Willis significant business disruption, substantial and unnecessary costs, and will divert significant resources, including time, money and employees, away from the strategic priorities of the business. Id. at ¶ 37. Willis will be required to engage in duplicative document productions, as well as deposition testimony from many of the same Willis witnesses on the same subjects.  Id. at ¶ 38.  This will further compel Willis Re's business, client services and legal personnel to expend unnecessary time and resources on duplicative document productions, and to prepare for and provide duplicative deposition testimony. Id. at ¶ 39.

The differing procedural rules in California, and the fact that the two actions can be expected to proceed to according to materially varying schedules, will significantly complicate effort to coordinate discovery and eliminate redundancies. Id. at ¶ 40.  Litigating the California Action has thus far already required the expenditure of significant resources, which include the expenditure of time and money retaining outside counsel in a different jurisdiction.  Id. at ¶ 41.  In addition, the prospect of inconsistent rulings and adverse injunctive relief resulting from the California Action stands to impact Willis Re's customer relationships and good will with the Relevant Clients.  Id. at ¶ 42.

---

[15] A true and correct copy of the Notice of Removal is annexed to the Bradshaw Decl. as **Exhibit K**.

Moreover, it is now clear that Herriott, who utilized the resources of Willis Re to acquire multi-million dollar customer relationships, for which he was well compensated, is now trying to take those customer relationships from Willis Re to TigerRisk Partners, which will cause irreparable harm to Willis Re and which is incapable of precise calculation, and monetary damages alone are inadequate to compensate Willis Re. Id. at ¶ 43. Willis is not trying to stop Herriott from working for TigerRisk Partners. Id. at ¶ 44.  He is free to do so, but he cannot breach his RCA by soliciting or servicing certain customers he worked for while at Willis Re. Id.

Unless injunctive relief is granted enforcing the RCA, Willis Re will suffer irreparable harm by way of loss of or damage to its client relationships, client goodwill, and client revenues; threat to office stability, morale, and procedures; and present economic loss, which is unascertainable at this time, and future economic loss, which is presently incalculable. Id. at ¶ 45.  In the absence of immediate injunctive relief, the damage to Willis Re's business and the loss of client goodwill, which Willis Re has built through the expenditure of substantial effort and expense as detailed above, would be incalculable. Id. at ¶ 46.  Willis Re stands not only to lose clients and employees to a competitor, but also lose the referrals from existing clients. Id. at ¶ 47.   Herriott's unlawful acts will also result in the tarnishing of Willis Re's image of dependability, stability, and client service, the loss of client confidence, the loss of talent to a competitor, and the loss of office stability and morale. Id. at ¶ 48. Only an immediate injunction can prevent the irreparable harm that Defendants will continue to cause and seek to achieve. Id. at ¶ 49.

## ARGUMENT

**I.    THE RCA REQUIRES APPLICATION OF NEW YORK LAW AND EXCLUSIVE VENUE IN NEW YORK**

The RCA Herriott signed expressly provides that it is governed by and construed in accordance with New York law, without regard to conflicts of law principles.  The choice of law provision clearly manifested the intent of Willis and Herriott to be governed by the law of New York.

-10-

See <u>AEI Life LLC v. Lincoln Ben. Life Co.</u>, 892 F.3d 126, 132 (2d Cir. 2018) (<u>citing</u> <u>Welsbach Elec.</u>
<u>Corp. v. MasTec N. Am., Inc.</u>, 7 N.Y.3d 624, 629, 825 N.Y.S.2d 692, 694 (N.Y. 2006) (noting that
courts should not alter agreements that are clear and unambiguous); <u>Tanzanian Royalty Expl. Corp.</u>
<u>v. Crede CG III, Ltd.</u>, 2019 U.S. Dist. LEXIS 50310, at *39 n.9 (S.D.N.Y. Mar. 26, 2019) (applying
New York law "[p]er the terms of the parties' agreements"). "New York courts should not engage in
any conflicts analysis where the parties include a choice-of-law provision in their contract." <u>Ministers</u>
<u>& Missionaries Benefit Bd. v. Snow</u>, 26 N.Y.3d 466, 474, 25 N.Y.S.3d 21, 26 (N.Y. 2015).  In
addition, New York courts refuse to consider the public policy of other states when determining
whether a choice of law provision should be overturned. <u>See</u> <u>Capstone Logistics Holdings, Inc. v.</u>
<u>Navarrete</u>, 2018 U.S. Dist. LEXIS 216940, at *66 (S.D.N.Y. Oct. 25, 2018) (<u>citing</u> <u>Gottwald v.</u>
<u>Sebert</u>, 161 A.D.3d 679, 680, 79 N.Y.S.3d 7, 8 (1st Dep't 2018). New York law applies and the Court
should reject Herriott's attempt to "forum shop" to avoid application of New York law.

Furthermore, the RCA provides that any suit, action or proceeding arising out of or relating
to the Agreements shall *only* be brought in the State and Federal Courts located in the County of New
York, State of New York.  The forum-selection clause represents the agreement of the parties as the
proper forum. <u>See</u> <u>Stewart Org., Inc. v. Ricoh Corp.</u>, 487 U.S. 22, 31 (1988).  "[F]orum-selection
clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interest
of the justice system." <u>Stewart Org., Inc.</u>, 487 U.S. at 33 (Kennedy, J., concurring).  Herriott expressly
agreed that all disputes under the RCA must be decided in New York and has therefore waived any
objections he may have to the venue of any suit, action or proceeding by virtue of entering into the
RCA.

## II.    WILLIS IS ENTITLED TO A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

The standard for obtaining a temporary restraining order and a preliminary injunction are
identical. <u>Sterling v. Deutsche Bank Nat'l Tr. Co.</u>, 2006-FF6, 368 F. Supp. 3d 723, 726-27 (S.D.N.Y.

26523171v.5

2019). The movant must show "(1) irreparable harm; (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party; and, (3) that a preliminary injunction is in the public interest." New York v. Actavis PLC, 787 F.3d 638, 650 (2d Cir. 2015); Marsh USA Inc, v. Schuhriemen, 183 F. Supp. 3d 529, 532-533 (S.D.N.Y. 2016) (citing Am. Civil Liberties Union v. Clapper, 804 F.3d 617, 622 (2d Cir. 2015)); Marsh USA Inc, v. Karasaki, 2008 U.S. Dist. LEXIS 90986, at *15.  In this case, each factor weighs in favor of granting a preliminary injunction in Willis' favor because it satisfies all preliminary injunction requirements.

**A.     Willis is Likely to Succeed on the Merits of its Claim that Herriott Breached the Forum Selection Clause in His RCA.**

As set forth above and below, Willis is likely to succeed on the merits of its claims that Herriott breached the RCA's Forum Selection Clause. See Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008) (citations omitted).  Under New York law, the Forum Selection Clause constrains Herriott to bring any action arising out of or relating to the RCA only in a court located in the County of New York, State of New York.  By agreeing to the New York Forum Selection Clause and then filing the California Action, Herriott has materially breached the Forum Selection Clause and Willis is likely to succeed on the merits of its breach of contract claim.  The RCA's Forum Section Clause is "prima facie valid." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 9-10 (1972).  The clause expressly states:

> Any suit, action or proceeding arising out of or relating to this RCA shall only be brought in the State and Federal Courts located in the County of New York, State of New York and the Parties hereto irrevocably and unconditionally submit accordingly to the exclusive jurisdiction of such courts for the purpose of any such suit, action or proceeding. The Associate hereby irrevocably and unconditionally waives any objections he or she may now have or hereafter have to the laying of the venue of any suit, action or proceeding arising out of or relating to this RCA in the foregoing courts. The Associate further acknowledges that for purposes of N.Y.C.P.L.R. 327(b) and N.Y. G.O.L. Section 5-1402, the value of the Plan is in excess of One Million Dollars ($1,000,000) and the Associate hereby further irrevocably and unconditionally waives any claim that any such suit, action or proceeding brought in the foregoing courts has been brought in an inconvenient forum.

The California Action is a suit, action and proceeding arising out of or relating to the RCA because Herriott seeks to declare both the choice of law and venue provisions of the RCA void and unenforceable. As such, the California Action is a quintessential suit, action or proceeding arising out of or relating to the RCA. See General Protecht Group, Inc. v. Leviton Mfg. Co., 651 F.3d 1355, 1358 (U.S. Ct. App. 2011) (upholding a district court's finding that a forum selection clause requiring dispute between the Parties relating to or arising out of an agreement barred a party from prosecuting an ITC action); Tourtellot v. Harza Architects, Eng'rs & Consti: Managers, 55 A.D.3d 1096, 1098 (N.Y. App. Div. 2008) (holding that forum selection clause covered "any dispute arising under or in connection with their agreement" despite that the "dispute" at issue fell outside the four corners of the agreement between the parties). See also Bernstein v. Wysoki, 77 A.D.3d 241, 250 (N.Y. App. Div. 2010).

With this broad, unambiguous language, the Forum Selection Clause in this case bars Herriott from bringing "any suit, action or proceeding" against Willis outside of New York state and federal courts that arise out of or relate to the RCA. See Phillips v. Audio Active Ltd., 494 F.3d 378, 386-87 (2d Cir. 2007) ("[O]bligatory and exclusive language in a forum-selection clause precludes parties from pursuing alternative forums.") By bringing an action against Willis in California that arises out of and relates to the RCA, Herriott materially breached the Forum Selection Clause. See Tex. Instruments, Inc. v. Tessera, Inc., 231 F.3d 1325, 1332 (Fed. Cir. 2000) ("Because the governing law clause encompasses ITC section 337 proceedings, Tessera breached this provision of the license agreement by bringing an action against TI at the ITC (which is in Washington, D.C.), rather than in a court in California, as mandated by the agreement.").

### B. Willis is Likely to Succeed on the Merits of its Claims that the RCA is Valid and Enforceable Under New York Law.

Willis further requests that this Court issue an Order enjoining Herriott from violating the non-solicitation provisions in his RCA that restrict the soliciting and servicing of certain Willis Re

-13-

clients.  Notably, Willis seeks "prohibitory" injunctive relief that does not require a change to the status quo, and thus, must only demonstrate "sufficiently serious questions going to the merits to make them a fair ground for litigation." Williams v. City of New York, 2018 WL 1785486, at *7 n.17 (E.D.N.Y. Apr. 13, 2018) (quoting Int'l Dairy Foods Ass'n v. Amestoy, 92 F.3d 67, 70 (2d Cir. 1996)). Willis meets, and easily exceeds, that bar.

Under New York law, "contracts in partial restraint of trade, if reasonable, are permitted." Ticor Title Ins. Co. v. Cohen, 173 F.3d 63, 70 (2d Cir. 1999).  To this end, restrictive covenants are valid and enforceable under New York law if they are "(1) necessary to protect the employer's legitimate interests; (2) reasonable in time and area; (3) not unreasonably burdensome to the employee; and (4) not harmful to the general public." Silipos, Inc, v. Bickel, 2006 WL 2265055, at *3 (S.D.N.Y. Aug. 8, 2006) (citing BDO Seidman v. Hirshberg, 93 N.Y.2d 382, 388-89 (1999)).  The RCA's narrowly tailored covenants satisfy these factors.

> ### a.      The Restrictions are Necessary to Protect Willis' Legitimate Interests
>
> #### (1)      The Restrictions are Necessary to Protect Willis' Client Base

New York law recognizes an employer's "legitimate interest in protecting client relationships developed by an employee at the employer's expense." Johnson Controls, Inc, v. A.P.T. Critical Sys, 323 F.Supp. 2d 525, at 534 (S.D.N.Y. 2004) (granting plaintiff's motion for a preliminary injunction in part, enjoining defendants from servicing plaintiff's existing customers that defendants served or solicited for a one year period). See Marsh USA Inc. v. Karasaki, 2008 U.S. Dist. LEXIS 90986, at *51 (S.D.N.Y. Oct. 30, 2008) (granting plaintiff's motion for a preliminary injunction in part, and rejecting defendant's argument that the relationship with his former employer's clients were personal and based on their desire to work with him only). See also Mercer Health & Benefits LLC v. DiGregorio, 307 F. Supp. 3d 326, at 350 (S.D.N.Y. 2018) (finding that the non-solicitation

agreements were reasonable to the extent they applied to the solicitation of the employer's current clients, and not potential clients).

Accordingly, companies like Willis have a legitimate interest in enforcing employee non-solicitation agreements in order to protect their client relationships. The lifeblood of a reinsurance brokerage company is its insurer client base, and by extension, the individual reinsurance brokers whose job it is to acquire, develop, and cultivate the relationships with those clients and service their business needs. Thus, it is no surprise that numerous courts in this District have enforced restrictive covenants in the insurance brokerage industry. See, e.g., DiGregorio, 307 F. Supp. 3d at 350 (recognizing insurance brokerage's legitimate interest in protecting its clients); USI Ins. Servs. LLC v. Miner, 801 F. Supp. 2d 175, 188 (S.D.N.Y. 2011) (recognizing insurance brokerage's legitimate interest in protecting its clients); Karasaki, 2008 U.S. Dist. LEXIS 90986, at *17 (recognizing insurance brokerage's legitimate interest in protecting its clients); Solomon Agency Corp. v. Choi, 2016 U.S. Dist. LEXIS 75949, *14 (E.D.N.Y) (finding that insurance brokerage has a legitimate business interest in protecting former employees from exploiting client relationships and goodwill); Marsh USA Inc. v. Schuhriemen, 183 F. Supp. 3d 529, 536 (S.D.N.Y. 2016) (finding that insurance brokerage has a legitimate interest in protecting its clients); DeWitt Stern Grp., Inc. v. Eisenberg, 2013 U.S. Dist. LEXIS 78598, at *13-14 (S.D.N.Y. June 3, 2013) (recognizing insurance brokerage's legitimate interest in protecting its clients through a narrowly tailored two-year non-compete provision).

At great expense, Willis enabled Herriott to acquire, develop, and cultivate direct relationships with clients over numerous years and at great expense. By imposing narrowly-tailored restrictions on Herriott's ability to solicit certain Willis Re clients, the restrictions serve Willis' legitimate interest in protecting its client base and employees, which was developed through Willis' substantial efforts and investments. See Karasaki, 2008 U.S. Dist. LEXIS 90986, at *17 (enforcing employee and

-15-

customer non-solicitation covenants based on client relationships formed by the employee with the employer's assistance, including by providing him a "generous expense account," hosting charity networking events, and offering him the support of other employees to service client accounts); <u>Renaissance Nutrition. Inc v. Kurtz</u>, 2012 U.S. Dist. LEXIS 2490, at *9 (W.D.N.Y.) (enforcing restrictive covenant where the employer "supported [the employees] in developing client relationships."); <u>see</u> also <u>Johnson Controls, Inc.</u>, 323 F. Supp. 2d at 534 (citing <u>Ticor Title Ins. Co. v. Cohen</u>, 173 F.3d 63, 70 (2d Cir. 1999) (finding that client relationships are special or unique, warranting injunctive relief); <u>BDO Seidman</u>, 93 N.Y.2d at 392 ("The employer has a legitimate interest in preventing former employees from exploiting or appropriating the goodwill of a client or customer, which had been created and maintained at the employer's expense") (citations omitted).

Despite the enormous time and expense that Willis incurred cultivating its goodwill and client relationships, it now stands to unfairly lose those valuable assets to Herriott, and to TigerRisk Partners, Willis' direct competitor, if Herriott and TigerRisk Partners are not enjoined. An injunction is warranted under these circumstances.

### b.    The Restrictions are Reasonable in Time and Geographic Scope

The temporal restraints in the RCA are eminently reasonable. The RCA precludes Herriott from directly or indirectly soliciting or performing services for Willis' clients of which he had business contact for two (2) years following his resignation from Willis Re. New York courts recognize that restrictions of two (2) years in the same or similar professions as reasonable. <u>See Marsh USA Inc, v. Karasaki</u>, 2008 U.S. Dist. LEXIS 90986, at *17 (S.D.N.Y.) (citing <u>Willis of New York, Inc, v. DeFelice</u>, 299 A.D.2d 240, 241 (1st Dep't 2002) (two year restriction reasonable for high-level insurance broker)).[16]

---

[16] If the Court grants Willis' motion and concludes that Herriott disregarded the terms of his RCA, then the two-year period should run from the date that an order is filed issuing a preliminary

Moreover, and because the territorial scope of the restrictions are customer based, this restriction is also inherently reasonable.  See id., at 17.  See also Malcolm Pimie, Inc, v. Werthman, 280 A.D.2d 934, 935 (4th Dep't 2001) (client-based restrictions are not unreasonable); Mallory Factor, Inc, v. Werthman, 146 A.D.2d 463, 467-68 (1st Dep't. 1989).  Indeed, the restriction does not prevent Herriott from earning a living in the reinsurance industry and does not prevent him from working for Willis competitors like TigerRisk Partners.  Rather, the narrowly tailored covenant prohibits only the solicitation of or providing services to those clients or prospective clients which Herriott had contact during his employment with Willis Re.  See, e.g., DiGregorlo, 307 F. Supp. 3d at 334 (enforcing customer non-solicitation agreement preventing defendants from being able to "solicit business from or perform services for any [plaintiff's] clients or prospective clients with whom he or she had contact or about whom he or she obtained confidential information during his or her last two years of employment for [plaintiff]."); Karasaki. 2008 U.S. Dist. LEXIS 90986, at *3 (enforcing provision restricting former employee from soliciting "any former client of the Company or its affiliates who was such within two (2) years prior to [his] termination of employment and who was solicited or serviced directly by [him] or where [he] supervised, directly or indirectly, in whole or in part, the solicitation or servicing activities related to such former clients."). The restrictions are narrowly tailored in both temporal duration and scope and, therefore, they are valid and enforceable

### c.      The Restrictions Do Not Unduly Burden Herriott

Enforcement of the restrictions contained in the RCA will not cause Herriott an undue hardship.  Notably, the restrictions do not in any way prevent Herriott from earning a livelihood. See Chemoff Diamond & Co. v. Fitzmaurice, Inc., 234 A.D.2d 200, 202, 651 N.Y.S.2d 504, 505-506 (1st

---

injunction. See Karasaki, 2008 U.S. Dist. LEXIS 90986, at *66-67 (citing New York Real Estate Institute. Inc, v. Edelman, 42 A.D.3d 321, 839 N.Y.S.2d 488 (1st Dep't 2007)).

Dep't 1996) ("There is no reason to suppose that [a two-year non-solicitation] limitation will prevent defendant from pursuing his livelihood []."); <u>Karasaki</u>, 2008 U.S. Dist. LEXIS 90986, at *54.

Moreover, Willis is not requesting that Herriott step down from his position at TigerRisk Partners — only that Herriott honor the reasonable non-solicitation and confidentiality restrictions contained in the RCA.  As noted above, the RCA only prevents Herriott from soliciting and servicing a limited amount of certain clients for a period of two years from the termination of his employment with Willis.  TigerRisk Partners may still use his talent and skills to solicit and service a myriad clients on behalf of TigerRisk Partners, so long as he does not pilfer Willis' clients that he had business contact with during his employment.  Accordingly, enforcement of the RCA would not unduly burden Herriott.

In addition, the non-solicitation of Willis Re's employees restriction is also valid and enforceable.  The restrictions have absolutely no impact on Herriott's own employment and do not unfairly burden Herriott or interfere with any public interest.  See <u>Mallory Factor Inc, v. Schwartz</u>, 146 A.D.2d 465, at 467-468 (N.Y. App. Div. First Dep't 1989). The restriction simply prohibits Herriott from interfering with Willis' business by trying to sway other Willis Re employees to leave Willis Re.  As such, the employee non-solicitation provision is valid and enforceable.  See <u>Global Telesystems. Inc, v. KPNQwest. N.V.</u>, 151 F. Supp. 2d 478, 481 (S.D.N.Y. 2001) ("New York recognizes the enforceability of covenants not to solicit employees") (citing <u>Veraldi v. Amer, Analytical Labs, Inc.</u>, 271 A.D.2d 599, 600, 706 N.Y.S.2d 158, 160 (2d Dep't 2000) (holding that restrictive covenant containing non-recruitment provision did not violate public policy)).

### d.   Herriott Breached the Terms of His RCA and Will Continue To Do So Absent Injunctive Relief

By commencing the California Action, Herriott has already breached his RCA and made clear that he intends to improperly solicit and service Willis Re clients in violation of his RCA.  The RCA expressly provides that Herriott shall not directly or indirectly solicit or perform reinsurance

-18-

brokerage, claims administration, consulting or other business performed by Willis with respect to clients he had business contact or provided services, and which were Willis Re clients at the time of his termination.

### C.      Willis Will Suffer Irreparable Harm Absent An Injunction.

#### a.      The California Action.

Willis will suffer irreparable harm absent an injunction barring litigation in California.  Absent injunctive relief, Willis will suffer irreparable harm that money damages cannot remedy.  Without an injunction, the California Action will continue to deprive Willis of its bargained-for forum and force it to litigate the same issues on multiple fronts. Swift, equitable relief is crucial and the federal courts deem these precise harms irreparable and worthy of preliminary injunctive relief.

For example, in <u>General Protecht Group, Inc. v. Leviton Mfg. Co.</u>, 651 F.3d 1355, 1358 (U.S. Ct. App., 2011) Leviton and General Protecht Group, Inc. ("GPG") agreed to a forum-selection clause requiring "[a]ny dispute between the Parties relating to or arising out of this [Agreement] shall be prosecuted exclusively in the United States District Court for the District of New Mexico." Nevertheless, Leviton sued GPG in both the ITC and the Northern District of California for patent infringement. <u>Id.</u>  GPG filed a declaratory judgment action for breach of contract and declarations of non-infringement in the bargained-for forum (New Mexico) and sought a temporary restraining order and preliminary injunction to stop Leviton from proceeding with its ITC and California actions. <u>Id.</u> The district court granted the preliminary injunction, finding "GPG would likely be irreparably harmed in the absence of a preliminary injunction because it would be deprived of its bargained-for forum and because it would likely be forced to litigate the same issues on multiple fronts at the same time."  <u>Id.</u>, at 1363-64. On appeal, the Federal Circuit affirmed and "conclude[d] that the district court's determination of irreparable harm was proper." <u>Id.</u>, at 1364.

Consistent with the Federal Circuit's precedent outlined above, Second Circuit courts also recognize the type of harm that Willis will suffer as irreparable absent an injunction that stops Herriott from proceeding with the California Action. By way of further example, in <u>Citigroup Global Mkts., Inc. v. Mun. Elec. Auth.</u>, 2014 U.S. Dist. LEXIS 110511, *1 (S.D.N.Y.), MEAG and Citigroup agreed to a forum selection clause requiring the parties to bring all actions and proceedings arising out of the agreement at issue in the United States District Court in the County of New York.  After MEAG initiated an arbitration against Citigroup, Citigroup filed an action in this Court, seeking injunctive relief to prevent MEAG from proceeding with its arbitration given the forum selection clause.  In granting an injunction, this Court found that "[s]ince Citigroup likely has no obligation to arbitrate its dispute with MEAG, it would be irreparably harmed by having to spend its resources on the arbitration." <u>Id.</u>, at *3.

Similarly, in <u>J.P. Morgan Secs. LLC v. Quinnipiac Univ.</u>, 2015 U.S. Dist. LEXIS 67135, *1 (S.D.N.Y.), JPMS sought injunctive relief to prevent Quinnipiac from proceeding with an arbitration against JPMS based on a forum-selection clause requiring "all actions and proceedings arising out of the" agreement "be brought in a New York State Court or United States District Court."  Granting the injunction, this Court determined "[a]s a matter of law, there is irreparable harm when a party is compelled to arbitrate ... without having agreed to arbitration because that party is forced to expend time and resources arbitrating an issue that is not arbitrable." <u>Id</u>; <u>see also</u> <u>Sanford L.P. v. Esselte AB</u>, 2015 U.S. Dist. LEXIS 193868 (S.D.N.Y.) (party suffers irreparable harm when it is forced to litigate on a second front that it contracted to avoid); <u>Int'l Fashion Prods., B.V. v. Calvin Klein, Inc.</u>, No. 09-CV-0982, 1995 U.S. Dist. LEXIS 2598, 1995 WL 92321, at *2 (S.D.N.Y. Mar. 7, 1995).

Indeed, the irreparable harm Willis faces are not theoretical. As this Court has long recognized, "the simultaneous maintenance of two proceedings is an unnecessary duplication of judicial and agency effort, not to mention expensive and time-consuming for the litigants." <u>AT&T v.</u>

-20-

Milgo Elec. Corp., 416 F. Supp. 951, 953 (S.D.N.Y) (1976). Indeed, the additional, unnecessary time and resources that the out-of-forum actions required in Citigroup and J.P. Morgan were irreparable harms that only immediate injunctive relief could curtail.

The same irreparable harm is present here where Herriott flouts the parties' bargain for a single forum (New York) and instead hits Willis with a suit in California with a substantial risk of inconsistent rulings. Simultaneously litigating this out-of-forum proceeding will also force Willis to expend significant human and financial resources.  Specifically, Herriott's California Action will force Willis personnel to expend substantial time, energy, and resources it otherwise could and would spend on vital business, client services, and legal functions.

As in Citigroup and J.P. Morgan, Herriott's California Action irreparably harms Willis as a matter of law by compelling Willis to expend time and resources to resolve a dispute with Herriott in a forum outside of the forum to which the parties agreed. This direct and significant impact on Willis is neither readily quantifiable nor remedied by money damages. Thus, immediate relief from this Court is required to staunch the profound, irreparable harm that Herriott has caused and will continue to cause Willis by violating the Forum Selection Clause.

**b.      The Loss of Clients and Customer Goodwill.**

In addition, it is well established in this Circuit that the loss of client relationships and customer goodwill that results from the breach of a non-compete clause generally constitutes irreparable harm. Karasaki, 2008 U.S. Dist. LEXIS 90986, at *40-41 (citing Johnson Controls. Inc, v. A.P.T. Critical Svs., Inc., 323 F. Supp. 2d 525, 532 (S.D.N.Y. 2004)). As the Second Circuit has recognized, it is "very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client that would produce an indeterminate amount of business in years to come." Ticor Title Ins. Co. v. Cohen, 173 F.3d 63, 69 (2d Cir. 1999).  See Marsh USA Inc, v.

Schuhriemen, 183 F. Supp. 3d 529, 536 (S.D.N.Y 2016) (citing Ticor Title Ins. Co., 173 F.3d at 69;

Karasaki, 2008 U.S. Dist. LEXIS 90986, at *14; Johnson Controls, 323 F. Supp. 2d, at 540)).

The loss of clients and goodwill resulting from Herriott plan to breach the non-solicitation provisions in his RCA is no exception.  The total monetary value of Willis' loss of clients would be very difficult, if not impossible, to calculate. Nor could the lost goodwill that Willis has built with these clients be easily quantified and compensated. Under these circumstances, Willis is and will continue to be irreparably harmed by the conduct of Herriott and injunctive relief is warranted.

**D.    The Balance Of the Equities Favors The Preliminary Injunction.**

Next, the balance of the equities weighs in Willis' favor.  In determining whether to grant a preliminary injunction, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief."  Winter, 555 U.S at 24. Here, the balance of the equities tilts decidedly in Willis' favor. Failure to enforce the Forum Selection Clause would not only deprive Willis of its private contractual bargain, but also deny it the protections and values realized by enforcing forum selection clauses as a matter of public policy—that is, "certainty and predictability in the resolution of disputes."  Brooke Grp. Ltd. v. JCH Syndicate 488, 663 N.E.2d 635, 638 (N.Y. 1996).

By refusing to comply with the Forum Selection Clause, Herriott threatens Willis' strategic business priorities, including client relationships, and endangers Willis' investments, profits, current and prospective customers, and goodwill with the Restricted Clients.  Herriott, in contrast, will not face any hardship much less hardship that is undue from litigating in this District.  Herriott bargained away his right to resolve any suit, action or proceeding arising out of or relating to the RCA in any court other than one in New York. See BP Prods. N. Am. Inc. v Motor Parkway Amoco, 2006 U.S. Dist. LEXIS 98029, at *5 (E.D.N.Y. Aug. 21, 2006) ("[A]ny hardship suffered by defendants upon enforcement of the covenant is mitigated by the fact that defendants specifically agreed to the

covenant in both the [contracts at issue], and that defendants received benefits under those contracts...."). Rather, "[g]ranting preliminary injunctive relief will simply require [Herriott] to comply with [his] legal obligations." L.V:M. v. Lloyd, 318 F. Supp. 3d 601, 620 (S.D.N.Y. 2018). Thus, the balance of equities strongly tips favor of Willis.

The evidence shows that following his resignation from Willis Re, and two days after Willis Re commenced this Action, Herriott commenced the California Action for sole purpose of obtaining permission from a California court to solicit and then provide services for the clients he serviced while at Willis Re. This conduct poses serious harm to Willis in that Willis is at risk of losing its clients. Herriott, on the other hand, is free to continue working for TigerRisk Partners and his livelihood will not be jeopardized by an injunction.  Indeed, the RCA does not prevent Herriott from competing with Willis and/or applying the knowledge and skill that he has obtained as a reinsurance professional. Under these circumstances, a balancing of the hardships heavily weighs in favor of injunctive relief.

### E.     The Preliminary Injunction Is In New York's Public Interest.

Finally, an injunction will serve the public interest. Forum selection clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972).  It is only through "enforcement of valid forum selection clauses, bargained for by the parties" that plaintiffs are able to "protect[] their legitimate expectations" and thereby "further[] vital interests of the justice system." Atl. Marine Constr. Co. v. United States Dist. Court, 571 U.S. 49, 63 (2013).

Indeed, "[i]n New York, agreements negotiated at arm's length by sophisticated, counseled parties are generally enforced according to their plain language pursuant to [New York's] strong public policy favoring freedom of contract." 159 MP Corp. v Redbridge Bedford, LLC, 33 N.Y.3d 353, 367 (N.Y. Ct. App. 2019).  And "New York has a strong public policy of enforcing forum selection clauses so that parties are able to rely on the terms of the contracts they make." Lazare

Kaplan Int'l Inc. v. KBC Bank NV., 337 F. Supp. 3d 274, 293 (S.D.N.Y. 2018).  In particular, with N.Y.. Gen. Oblig. Law § 5-1402, "the [New York] Legislature made explicit that 'public policy favors New York courts retaining lawsuits where New York is the designated forum.'" Babcock & Wilcox Co. v. Control Components, Inc., 614 N.Y.S.2d 678, 681 (N.Y. Sup. Ct. 1993) (citation omitted).

Given these critical objectives, an injunction furthers the public interest by enforcing the terms of the RCA. See Citigroup Global Mkts., Inc. v. Mun. Elec. Auth., 2014 U.S. Dist. LEXIS 110511, *4 (S.D.N.Y.) ("Since the forum selection clause constituted a waiver of MEAG's right to arbitration, an injunction would favor the public interest because it would enforce the terms of the contract between the parties."). See also Gen. Protecht, 651 F.3d at 1365-66 (same).  The New York public interest weights strongly in favor of an injunction in favor of Willis and against Herriott.

In addition, New York public policy supports the enforcement of reasonable restrictive covenants, including non-competition agreements that are more restrictive than the covenants at issue here.  "[Restrictive] covenants serve an important public-policy function by encouraging employers to make significant investments in training key employees and permitting employers to share confidential information with employees, which encourages the free exchange of ideas among top personnel." Verizon Communications, Inc, v. Pizzirani, 462 F. Supp. 2d 648, 662 (E.D.P.A. 2006) (applying New York law); see also Estee Lauder Cos. v. Batra, 430 F. Supp. 2d 158, 179 (S.D.N.Y. 2006) (rejecting defendant's argument "that the purpose of the Non-compete Agreement is pernicious to New York's policy regarding covenants not to compete).  The New York public interest would be served by granting Willis' request for injunctive relief as outlined herein.

## III.    ANY BOND THE COURT ORDERS AS SECURITY FOR INJUNCTIVE RELIEF SHOULD BE NOMINAL

Fed. R. Civ. P. 65(c) provides: "The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."

Applied here, any bond the Court orders as security for the issuance of a temporary restraining order or preliminary injunction should be nominal. As Rule 65(c) provides, the purpose of the bond is to protect the defendants against damages they may sustain if the injunctive relief was wrongly issued. The risk of loss to Herriott after the issuance of a temporary restraining order is virtually non-existent. Accordingly, Willis requests that the Court only require it to post a nominal bond as security for the issuance of the injunctive relief it seeks.

## IV.    PLAINTIFFS ARE ENTITLED TO EXPEDITED DISCOVERY

Expedited discovery is routinely granted in actions like this. See Digital Sin, Inc. v. John Doe, *1-176*, 279 F.R.D. 239, 241 (S.D.N.Y. 2012) (quoting Ayyash v. Bank Al-Madina, 233 F.R.D. 325, 326-27 (S.D.N.Y. 2005)); Benham Jewelry Corp. v. Aron Basha Corp., No. 97-Civ.-3841 (RWS), 1997 WL 639037, at *20 (S.D.N.Y. Oct. 14, 1997). Under the applicable standard, good cause exists to order expedited discovery, the request is reasonable in light of all the surrounding circumstances, and the need for expedited discovery outweighs the prejudice to the responding party.  Willis seeks expedited discovery to mitigate the injury caused by Herriott's breach of his RCA.  The Court has before it clear evidence that Herriott has willfully breached his RCA and intends to continue to do so. The expedited discovery sought by Willis will be reasonable and narrowly tailored. Herriott cannot complain that he will be prejudiced by having to engage in expedited discovery. To the contrary, Willis will be prejudiced if expedited discovery is not ordered because it will be exposed to continued harm as a result of Herriott's blatant and willful violations of his RCA. For all the foregoing reasons, expedited discovery is warranted in this case.

## CONCLUSION

For all the foregoing reasons, Willis respectfully requests that the Court issue a temporary restraining order and a preliminary injunction and grant the request for expedited discovery.

26523171v.5

Dated: New York, New York
      January 28, 2021

WHITE AND WILLIAMS LLP

By: _____

Scott H. Casher, Esq.
George C. Morrison, Esq.
Times Square Tower
7 Times Square, Suite 2900
New York, New York 10036
*Attorneys for Plaintiffs*

-26-

26523171v.5