# EXHIBIT E

**SCHEDULE B**

# AGREEMENT OF RESTRICTIVE COVENANTS AND OTHER OBLIGATIONS FOR EMPLOYEES IN THE UNITED STATES

This Agreement of Restrictive Covenants and Other Obligations for Employees in the United States (the "RCA") is entered into by and between Willis Towers Watson Public Limited Company (the "Company") and the participant (the "Colleague") to be effective as of the date the Colleague signs or electronically accepts this RCA.

## RECITALS

**Whereas**, Colleague is employed by a Subsidiary of the Company;

**Whereas**, subject to approval by the Committee or the Company's Share Award Committee, the Colleague has been designated to receive a grant of performance-based restricted share units ("PRSUs" or "Awards") under the Company's 2012 Equity Incentive Plan (the "Plan");

**Whereas**, any Award granted to the Colleague is subject to the terms and conditions of the Plan, the award agreement evidencing the Colleague's Award (including any country specific terms thereto) and this RCA, and in consideration of the Award, the Colleague shall enter into and acknowledge his or her agreement to the terms and conditions of the Plan, the award agreement and this RCA; and

**Whereas**, the Colleague acknowledges and agrees that he or she desires to receive the Award and understands and agrees any Award is subject to the terms and conditions set forth in the Plan, the applicable award agreement and this RCA.

**NOW, THEREFORE**, in consideration of the mutual covenants and promises contained herein and for other valuable consideration, in particular the Award, the receipt and sufficiency of which is hereby acknowledged in this recital and within Section 6.4 below, the Parties hereto agree, with the intent to be bound, as follows:

Section 1 - Recitals

The Recitals set forth above are an integral part of this RCA, and are incorporated herein by reference.

Section 2 - Definitions

2.1. "**Award**" shall have the meaning as set forth in the recitals.

2.2. "**Business**" shall mean insurance brokerage, reinsurance brokerage, surety brokerage, bond brokerage, insurance agency, underwriting agency, managing general agency, risk management, claims administration, self-insurance, risk management consulting or other business performed by the Restricted Group.

2.3. "**Committee**" shall have the same meaning as set forth in the Plan or the applicable award agreement.

2.4. "**Competitor**" shall mean any business principally engaged in insurance brokerage, reinsurance brokerage, surety brokerage, bond brokerage, insurance agency, underwriting agency, managing general agency, risk management, claims administration, self-insurance, risk management consulting or other business which is either performed by the Restricted Group or is a business in which the Restricted Group has taken steps toward engaging.

2.5. "**Confidential Information**" shall mean all trade secrets and non-public information concerning the financial data, strategic business plans, and other non-public, proprietary, and confidential information of the Restricted Group. Confidential Information includes, but is not limited to, the following information: identities of Relevant Clients and Relevant Prospects; identities of companies from which any Subsidiary obtains insurance coverage for Relevant Clients and Relevant Prospects; policy terms, conditions, rates and expiration dates pertaining to Relevant Clients and Relevant Prospects; risk characteristics of Relevant Clients and Relevant Prospects; and non-public information of the Restricted Group concerning insurance markets for particular risks. Confidential Information shall not include information that is within public domain, provided that Colleague was not responsible, directly or indirectly, for such information entering the public domain without the Restricted Group's consent.

2.6. "**Directly or indirectly**" shall mean the Colleague acting either alone or jointly with or on behalf of or by means of or in concert with any other person, firm or company (whether as principal, partner, manager, employee, contractor, director, consultant, investor or similar capacity) or otherwise.

2.7. "**Employer**" shall mean the Subsidiary that employs the Colleague. If the Company ever becomes an employer of the Colleague, then the term Employer shall refer to the Company.

2.8. "**Employment Agreement**" shall mean the contractual terms and conditions which govern the employment of the Colleague by Employer.

2.9. "**Key Personnel**" shall mean any person who is at the date the Colleague ceases to be an employee of Employer or was (i) at any time during the period of twelve (12) months prior to that date employed by the Restricted Group, (ii) an employee with whom Colleague had dealings, and (iii) employed by or engaged in the Business in a managerial capacity, or was an employee with insurance, reinsurance or other technical expertise.

2.10. "**Plan**" shall have the meaning set forth in the recitals.

2.11. "**Relevant Area**" shall mean the counties, parishes, districts, municipalities, cities, metropolitan regions, localities and similar geographic and political subdivisions, within and outside of the United States of America, in which the Employer, the Company or any of its Subsidiaries has carried on Business in which the Colleague has been involved or concerned or working on at any time during the period of twelve (12) months prior to the date on which the Colleague ceases to be employed by Employer.

2.12. "**Relevant Client**" shall mean any person, firm or company who or which at any time during the period of twelve (12) months prior to the date on which the Colleague ceases to be employed by Employer is or was a client or customer of the Employer, the Company or any of its Subsidiaries or was in the habit and/or practice of dealing under contract with the Employer, the Company or any of its Subsidiaries and with whom or which the Colleague had dealings related to the Business) or for whose relationship with the Employer, the Company or any of its Subsidiaries the Colleague had responsibility at any time during the said period.

2.13. "**Relevant Period**" shall mean the period of twenty four (24) months following the date on which the Colleague ceases to be employed by Employer.

2.14. "**Relevant Prospect**" shall mean any person, firm or company who or which at any time during the period of six (6) months prior to the date on which the Colleague ceases to be employed by Employer was an active prospective client of the Employer, the Company or

   any of its Subsidiaries with whom or with which the Colleague had dealings related to the Business (other than in a minimal and non-material way).

2.15.  "**Restricted Group**" shall mean the Company and its Subsidiaries, including the Employer, as in existence during the Colleague's employment with Employer and as of the date such employment ceases.

2.16.  "**Subsidiary**" shall mean a direct and/or indirect subsidiary of the Company as well as any associate company which is designated by the Company as being eligible for participation in the Plan.

Section 3 - <u>Non-Solicit and Other Obligations</u>

3.1.  The Colleague acknowledges that by virtue of his or her management position and as an employee of Employer, the Colleague has acquired and will acquire knowledge of Confidential Information of the Restricted Group and their Business. The Colleague further acknowledges that the Confidential Information which the Restricted Group has provided and will provide to the Colleague would give the Colleague a significant advantage if the Colleague were to directly or indirectly be engaged in any Business at a Competitor of the Restricted Group.

3.2.  Without the Company's prior written consent, the Colleague shall not directly or indirectly, at any time during or after the Colleague's employment with any Employer, disclose any Confidential Information and shall use the Colleague's best efforts to prevent the taking or disclosure of any Confidential Information to a Competitor, or otherwise, except as reasonably may be required to be disclosed by the Colleague in the ordinary performance of his or her duties for Employer or as required by law. Notwithstanding the foregoing, you understand that if you make a confidential disclosure of a trade secret of the Company or other Confidential Information to a government official or an attorney for the sole purpose of reporting a suspected violation of law, or in a court filing under seal, or otherwise engage in activities protected under whistleblower statutes, you shall not be held liable under this Agreement or under any federal or state trade secret law for such a disclosure or engaging of such activity and shall also not be required to notify the Company of any such disclosure or engaging of any such activity.

3.3.  The Colleague shall not, for the Relevant Period, directly or indirectly for a Competitor or otherwise:

  3.3.1.  within the Relevant Area, solicit any Relevant Client or Relevant Prospect for the purposes of any Business which competes or will compete or seeks to compete with the Restricted Group;

  3.3.2.  within the Relevant Area, accept, perform services for, or deal with any Relevant Client or Relevant Prospect for the purposes of any Business which competes or will compete or seeks to compete with the Restricted Group;

  3.3.3.  solicit for employment or entice away from the Restricted Group any Key Personnel; or

  3.3.4.  employ or engage or endeavour to employ or engage any Key Personnel.

3.4.  To the extent the Colleague is a party to an Employment Agreement or other agreement with the Employer, the Company or any Subsidiary that contains post-employment covenants and restrictions, those post-employment covenants and restrictions shall be separate and apart and

       independent from the covenants and restrictions set forth in Section 3.2 and Section 3.4 herein.

3.5.    The Colleague shall not directly or indirectly, at any time during or after the Colleague's employment with any Employer, take any action or make any statement, written or oral, that disparages or criticizes the business or management of the Employer, the Company or any Subsidiary or any of its or their respective directors, officers, agents, employees, products or services. Nothing contained herein limits or restricts any rights Colleague may have to engage in protected concerted activity under the National Labor Relations Act.

3.6.    The Colleague recognizes and agrees that the payment of damages will not be an adequate remedy for any breach by Colleague of any of the covenants set forth in Section 3 of this RCA.  Colleague recognizes that irreparable injury will result to Company and/or its Subsidiaries in the event of any such breach and therefore Colleague agrees that Company may, in addition to recovering damages, proceed in equity to enjoin Colleague from violating any such covenant.

3.7.    The Colleague acknowledges that the provisions of this Section 3 are fair, reasonable and necessary to protect the goodwill and interests of the Restricted Group.

Section 4  -  <u>Governing Law & Jurisdiction</u>

4.1.    This RCA shall be governed by and construed in accordance with the laws of the state of New York, without regard to its conflicts of law principles.

4.2.    Any suit, action or proceeding arising out of or relating to this RCA shall only be brought in the State and Federal Courts located in the County of New York, State of New York and the Parties hereto irrevocably and unconditionally submit accordingly to the exclusive jurisdiction of such courts for the purpose of any such suit, action or proceeding. The Colleague hereby irrevocably and unconditionally waives any objections he or she may now have or hereafter have to the laying of the venue of any suit, action or proceeding arising out of or relating to this RCA in the foregoing courts.  The Colleague further acknowledges that for purposes of N.Y.C.P.L.R. 327(b) and  N.Y. G.O.L. Section 5-1402, the value of the Plan is in excess of One Million Dollars ($1,000,000) and the Colleague hereby further irrevocably and unconditionally waives any claim that any such suit, action or proceeding brought in the foregoing courts has been brought in an inconvenient forum.

Section 5  -  <u>Consideration, Severability, Beneficiaries & Effect on other agreements</u>

5.1.    The Parties acknowledge that the provisions of this RCA are severable.  If any part or provision of this RCA shall be determined by any court or tribunal to be invalid, then such partial invalidity shall not cause the remainder of this RCA to be or become invalid.  If any provision hereof is held unenforceable on the basis that it exceeds what is reasonable for the protection of the goodwill and interests of the Restricted Group, but would be valid if part of the wording were modified or deleted, as permitted by applicable law, then such restriction or obligation shall apply with such deletions or modifications as may be necessary to make it enforceable.

5.2.    The Colleague acknowledges that he or she remains bound by any Employment Agreement or any other agreement currently in effect by and between the Colleague, on the one hand, and the Employer, the Company or any Subsidiary, on the other hand, including but not

    limited to any post-employment covenants and restrictions, and this RCA shall be in addition to, and not in place of any such agreements.

 5.3. Nothing contained in this RCA constitutes a promise or agreement to employ the Colleague for a guaranteed term or otherwise modify the terms and conditions of the Colleague's employment with the Employer.

Section 6  – <u>Miscellaneous</u>

 6.1. This RCA, and the provisions hereof, may not be modified, amended, terminated, or limited in any fashion except by written agreement signed by both parties hereto, which specifically states that it is modifying, amending or terminating this RCA.

 6.2. The rights and remedies of the Restricted Group under this RCA shall inure to the benefit of any and all of its/their successors, assigns, parent companies, sister companies, subsidiaries and other affiliated corporations, and the successors and assigns of each of them.

 6.3. The waiver by either party of any breach of this RCA shall not operate or be construed as a waiver of that party's rights on any subsequent breach.

 6.4. The Colleague acknowledges that the Award constitutes adequate consideration to support the covenants and promises made by the Colleague within this RCA regardless of whether such Award is ultimately beneficial to Colleague.

 6.5. The Colleague acknowledges and agrees that the Colleague shall be obliged to draw the provisions of Section 3 of this RCA to the attention of any third party who may, at any time before or after the termination of the Colleague's employment with Employer, offer to employ or engage him or her and for or with whom Colleague intends to work within the Relevant Period.

 6.6. The various section headings contained in this RCA are for the purpose of convenience only and are not intended to define or limit the contents of such sections.

 6.7. This RCA may be executed in one or more counterparts, each of which shall constitute an original and all of which taken together shall constitute one and the same document. This RCA will be binding, notwithstanding that either party's signature is displayed only on a facsimile or electronic copy of the signature page.

 6.8. Any provisions which by their nature survive termination of this RCA, including the obligations set forth in Section 3 and Section 4, shall survive termination of this RCA.

 6.9. This RCA has been executed on behalf of the Company electronically and the Colleague accepts the electronic signature of the Company.

*By the Colleague's execution or electronic acceptance of this RCA in the manner specified in the Colleague's online account with the Company's designated broker/stock plan administrator, the Colleague and the Company have agreed to the terms and conditions of this RCA in connection with the Colleague's Award.*

**Signed for and on behalf of
Willis Towers Watson Public Limited Company by:**

*[signature: Anne Donovan Bodnar]*

Name:   Anne Donovan Bodnar
Title:   Chief Administrative Officer and Head of Human Resources

**Colleague**:

Signature:   **Signed Electronically**

Print Name:   **PAUL D HERRIOTT**


**05/08/2020**

B-6