**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| WILLIS TOWERS WATSON PUBLIC LIMITED COMPANY and WILLIS RE INC. | : |
| Plaintiffs, | : 21-cv-00487 (JMF) |
| v. | : |
| PAUL HERRIOTT | : |
| Defendant. | : |

**SUPPLEMENTAL MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR**
**A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION**

By:

Scott H. Casher, Esquire
George C. Morrison, Esquire
White and Williams LLP
Times Square Tower
7 Times Square, Suite 2900
New York, NY 10036
*Attorneys for Plaintiffs.*

26580288v.2

## <u>TABLE OF CONTENTS</u>

Page

1.   **New York Courts Cannot Disregard a New York Choice of Law Provision to Apply a Different State's Law.** ........................................................................................1

2.   **The New York Choice-of-Law Provisions in the RCAs and Controlling Decisions Preclude Consideration of California Labor Code §925.**.............................8

26580288v.2

# TABLE OF AUTHORITIES

**Page(s)**

CASES

BDC Mgmt. Svcs., LLP et al. v. Singer et al.,
    144 A.D.3d 597, 41 N.Y.S.3d 419 (1st Dep't 2016) ................................................................3

Capstone Logistics Holdings, Inc., et al. v. Navarrete, et al.,
    2018 U.S. Dist. LEXIS 216940 (S.D.N.Y. Oct. 25, 2018) ...................................................2, 4

Capstone Logistics Holdings, Inc., et al. v. Navarrete, et al.,
    2020 U.S. App. LEXIS 38776 (2d Cir. Dec. 11, 2020) .........................................................2, 4

Estee Lauder Cos. v. Batra,
    430 F. Supp. 2d 158 (S.D.N.Y. 2006)...................................................................................3, 9

Focus Fin. P'rs, LLC, v. Holsopple,
    2020 Del. Ch. LEXIS 320, 2020 WL 6266915 (Del. Ch. Oct. 26, 2020)..............................10

Gottwald v. Sebert,
    161 A.D.3d 679, 79 N.Y.S.3d 7 (1st Dep't 2018) ...................................................................2

Integra Optics, Inc. v. Messina,
    52 Misc. 3d 1210[A], 41 N.Y.S.3d 719 (Sup. Ct. Albany Cty. 2016)......................................5

Lucente v. IBM,
    75 F. Supp. 2d 169 (S.D.N.Y. 1999)....................................................................................3, 4

Medicrea USA, Inc. v. K2M Spine, Inc.,
    No. 17-CV-8677 (AT), 2018 WL 3407702 (S.D.N.Y. Feb. 7, 2018).......................................5

Mindspirit, LLC v. Evalueserve Ltd.,
    346 F. Supp. 3d 552 (S.D.N.Y., Sept. 30, 2018) .................................................................4, 5

Ministers & Missionaries Benefit Board v. Snow,
    26 N.Y.3d 466 (2015) ...............................................................................1, 2, 3, 4, 5, 8, 9, 10

Monsanto v. United States,
    348 F.3d 345 (2d Cir. 2003)....................................................................................................5

TGG Ultimate Holdings, Inc. v. Hollett,
    224 F. Supp. 3d 275 (S.D.N.Y. 2016).....................................................................................5

STATUTES

California Labor Code §925 ...........................................................................................8, 9, 10

California Labor Code § 2855 ...................................................................................................3

26580288v.2

1.    **New York Courts Cannot Disregard a New York Choice of Law Provision to Apply a Different State's Law.**

In its February 3, 2021 Order, this Court Ordered the parties to file supplemental briefs addressing two questions. The first question posed is: "Following [Ministers & Missionaries Benefit Board v. Snow, 26 N.Y.3d 466, 474 (2015)], may a New York court disregard a choice-of-law provision designating New York as the governing law if such application would violate the fundamental public policy of another state?"

The short answer to this Court's first question is "no". New York courts cannot disregard a New York choice of law provision to apply a different state's law. This Court correctly noted in its February 3, 2021 Order that "the Second Circuit (in Capstone, 736 F. App'x 25 (2d Cir., Aug. 31, 2018)) suggested that the 'fundamental public policy' exception might have survived Ministers. … [t]he Circuit, however, did not decide the issue." However, as discussed below, the ultimate determination by the district court in Capstone *after remand* was that New York courts are to apply the chosen law in the chosen choice of law provision *without regard to the public policy of another state.*

The main issue before the Second Circuit in Capstone was how to resolve a conflict between the laws of California, where some of the employees resided and worked, and Delaware, which was chosen as the applicable law in the RCAs. **In the August 2018 decision,** the Second Circuit, citing Ministers, held that "[t]he parties' choice of law is, without more, indicative of the parties' desire to select the substantive law of the selected state, a choice that New York courts generally honor." Id. The Second Circuit, however, again citing Ministers, stated that "the Court of Appeals of New York did not have cause to address the status of prior law recognizing that the parties' choice of law must yield to a conflicting law reflecting the 'fundamental public policy' of a state with a 'materially greater interest' in the dispute than the chosen state." Id. The Second Circuit therefore vacated the

district court's July 28, 2017 <u>two-page</u> order (copy attached hereto as Exh A) and remanded the case for the district court to consider the public policy exception from the common law conflict-of-law analysis after <u>Ministers</u> where there is a contract with a choice-of-law provision.

After remand, the district court in <u>Capstone</u>, 2018 U.S. Dist. LEXIS 216940 (S.D.N.Y., Daniels, J., Oct. 25, 2018), issued a <u>57-page</u> opinion,[1] which included specific findings of fact and conclusions of law, and considered the public policy exception from the common law conflict-of-law analysis.  After this thorough analysis, the district court held that New York courts are **<u>not</u>** to consider the fundamental public policy of a foreign law when there is a contract with a choice-of-law provision as that "would swallow whole the <u>Ministers</u> holding that courts need not engage in conflicts analysis." <u>Capstone,</u> 2018 U.S. Dist. LEXIS 216940, *66-67 (S.D.N.Y., Daniels, J., Oct. 25, 2018). Importantly, **the Second Circuit affirmed that decision in December 2020**. See <u>Capstone</u>, 2020 U.S. App. LEXIS 38776 (2d Cir. Dec. 11, 2020) (dismissing the appeal after considering the employees' arguments and concluding that they were without merit, and affirming the district court's grant of injunctive relief in all respects).

In reaching its holding that New York courts should not consider foreign public policy arguments, the district court, again citing to <u>Ministers</u>, held that "under New York's choice-of-law rules, 'when parties include a choice-of-law provision in a contract, they intend that the law of the chosen state—and no other state—will be applied.'"  **As the district court noted, since <u>Ministers</u> was handed down, the courts of New York have refused to consider the public policy of foreign states - including California - to overturn an otherwise valid contractual choice of law provision[2].** <u>See, e.g.,</u> <u>Gottwald v. Sebert</u>, 161 A.D.3d 679, 79 N.Y.S.3d 7 (1st Dep't 2018) (rejecting

---

[1] The district court's original 2017 order (Exh. A), vacated by the Second Circuit, was only two pages.

[2] As the district court noted, the cases identified by the Second Circuit in its Summary Order in <u>Capstone</u> (736 F. App'x 25 (2d Cir., Aug. 31, 2018)) *preceded* <u>Ministers</u>.

claim that contract should be terminated for violating California Labor Code § 2855, "as the unambiguous New York choice-of-law provisions contained in the agreements preclude the application of that California statute") (citing Ministers); BDC Mgmt. Svcs., LLP et al. v. Singer et al., 144 A.D.3d 597, 41 N.Y.S.3d 419 (1st Dep't 2016) (rejecting argument that contract was illegal under New Jersey law where agreement contained New York choice of law provision because "[Minsters] precludes this court from considering New Jersey law when adjudicating the parties rights under the Acquisition Agreement.").

The law chosen by the parties in Capstone was Delaware law. Importantly, as the district court in Capstone held, even putting aside the ruling in Ministers, "the question is not whether Delaware law would violate California's fundamental public policy, but rather whether it would violate New York's. This is particularly evident because a requirement that New York courts consider the fundamental public policy of a foreign law would swallow whole the Ministers holding that courts need not engage in conflicts analysis." There was no argument in Capstone that application of Delaware law would violate New York's fundamental public policy.

Moreover, the district court in Capstone, citing Estee Lauder Cos. v. Batra, 430 F. Supp. 2d 158, 170-71 (S.D.N.Y. 2006), also stated that even it were to ignore Ministers and consider the public policy exception, California does not have a materially greater interest than New York in the dispute. See Estee Lauder Cos. v. Batra, 430 F. Supp. 2d 158, 170-71 (S.D.N.Y. 2006) (holding that California does not have a materially greater interest than New York in a restrictive covenant that had a New York choice-of-law provision, even though the defendant was a California resident that worked in California, because defendant was responsible for business outside California and New York had an interest in protecting its businesses). The district court in Capstone, citing Lucente v. IBM, 75 F. Supp. 2d 169, 172 (S.D.N.Y. 1999), noted that courts have upheld choice-of-law provisions in similar executive compensation plans, despite arguments that the chosen law would violate public policy

-3-

where the executive resided. See <u>Lucente v. IBM</u>, 75 F. Supp. 2d 169, 172 (S.D.N.Y. 1999) ("Executive compensation plans would be essentially worthless if their terms meant different things to different participants based on a participant's residence.").  Of course, these factors do not need to be considered because the district court found that, under <u>Ministers,</u> New York courts are to honor the chosen choice of law without consideration of such factors.

In the Second Circuit's decision in <u>Capstone</u> affirming the decision by the district court (<u>Capstone</u>, 2020 U.S. App. LEXIS 38776 (2d Cir., Dec. 11, 2020)), the Second Circuit noted that the employees challenged the preliminary injunction on the ground that "it rested on unenforceable contractual provisions under California law." The Second Circuit dismissed the appeal, after reviewing for a third time the employees' challenge to the district court's grant of injunctive relief, stating that it considered the employees' arguments, concluded that the arguments were without merit, affirmed the district court's grant of injunctive relief in all respects, and remanded only for the district court to correct the form of the permanent injunction.

Thus, the decision of the district court in <u>Capstone</u> (2018 U.S. Dist. LEXIS 216940 (S.D.N.Y., Daniels, J., Oct. 25, 2018), as affirmed by the Second Circuit just two months ago (2020 U.S. App. LEXIS 38776 (2d Cir., Dec. 11, 2020)), stands.  Based on <u>Ministers</u>, <u>Capstone</u>, and the other cases cited herein, courts in New York are **<u>not</u>** to consider the public policy of a foreign law when there is a choice-of-law provision in a contract. Accordingly, the New York choice of law clause in the RCA should be honored without any consideration of other factors, including the public policy of California.

As further support, and similar to the rulings in <u>Capstone</u>, the court in <u>Mindspirit, LLC v. Evalueserve Ltd.</u>, 346 F. Supp. 3d 552, 583-585 (S.D.N.Y., Sept. 30, 2018), held that <u>Ministers</u> forecloses the common-law conflict-of-law public policy exception. The court in <u>Mindspirit</u> stated: "The language of <u>Ministers</u> is unequivocal and brooks no exceptions: 'a New York choice-of-law

-4-

clause in a contract . . . demonstrates the parties' intent that courts not conduct a conflict of laws analysis,' and 'obviates the application of both common-law conflict-of-laws principles and statutory choice-of-law directives. . . .'" Id.

Citing Integra Optics, Inc. v. Messina, 52 Misc. 3d 1210[A], 41 N.Y.S.3d 719, (Sup. Ct. Albany Cty. 2016), the court in Mindspirit held that the Integra Optics court read Ministers to preclude the public policy exception argument. Id. The Mindspirit court noted that in Integra Optics that plaintiff Integra Optics, a New York corporation, moved for a preliminary injunction to enforce the terms of a non-competition agreement signed by defendant, Messina, a resident of California and a former sales executive of Integra, who went to work for a competitor in California, and who opposed the motion and cross-moved for a declaration that the agreement is unenforceable under California law. Defendant Messina argued that despite a New York choice of law provision in the contract California law should apply, because the non-compete clause at issue - while likely enforceable under New York law - should be deemed void under the laws and public policy of California. Id. **In rejecting the argument that California law should be applied because enforcement of the non-compete clause would be repugnant to California law and public policy, the court held that - in light of Ministers - litigants "cannot credibly claim that the application of New York law by a New York court would violate New York's public policy." Id.**

This Court is correct that the two decisions relied on by Herriott, TGG Ultimate Holdings, Inc. v. Hollett, 224 F. Supp. 3d 275, 282 (S.D.N.Y. 2016), and Medicrea USA, Inc. v. K2M Spine, Inc., No. 17-CV-8677 (AT), 2018 WL 3407702, at *9 (S.D.N.Y. Feb. 7, 2018), do not acknowledge or distinguish Ministers, or the decisions by the Second Circuit and the district court in Capstone, and the other decisions discussed herein. They therefore are unsound and should not be followed. See Monsanto v. United States, 348 F.3d 345, 351 (2d Cir. 2003) (district courts within the Second Circuit

-5-

must follow Second Circuit precedent unless and until that case is reconsidered by the Second Circuit sitting en banc or its equivalent or is rejected by a later Supreme Court decision).

Finally, the Court should reject any attempt by Herriott in his supplemental briefing to reiterate the argument he made during the hearing before this Court on February 2, 2021 regarding the interaction between his various agreements with Willis, in an effort to have this Court examine under California law the formation of the RCA. Specifically, Herriott argues that the choice of law, choice of venue, and restrictive covenants in his 2003 Employment are "inconsistent" with the choice of law, choice of venue, and restrictive covenants in his RCA, and therefore this Court should disregard the RCA in its totality. As discussed below, that argument also falls flat.

Herriott's 2018, 2019 and 2020 RCA, signed by him as part of an award of stock given to select employees of Willis Re, is not a modification of his 2003 Employment Agreement because the RCA expressly states that it is not an employment agreement, and expressly states that the RCA is separate, apart, independent, in addition to, and not in place of any employment agreement. More specifically, the RCA provides, "To the extent the Associate is a party to an Employment Agreement (Sec. 2.8 provides that "'Employment Agreement' shall mean the contractual terms and conditions which govern the employment of the Associate by Employer") or other agreement with the Employer, the Company or any Subsidiary that contains post-employment covenants and restrictions, those post-employment covenants and restrictions shall be *separate and apart and independent from* the covenants and restrictions set forth in Sections 3.2 and 3.3 herein." Section 3.4 (emphasis added). Accordingly, the parties specifically intended for the covenants in the RCA to apply irrespective of what covenants were or were not part of Herriot's employment agreement. Additionally, Section 5.2 of the RCA provides that "this RCA shall be in addition to, and not in place of any such agreements." Thus, the RCA clearly does not "modify" the 2003 Employment Agreement. The RCA stands on its

own as a separate and independent agreement, apart from and in addition to the 2003 Employment Agreement.

As for Herriott's argument to the Court that there are "inconsistencies" between the 2003 Employment Agreement and the RCA, and that the 2003 Employment Agreement should therefore control, thereby voiding the New York choice of law and NY choice of venue provisions and restrictive covenants contained in the 2018, 2019 and 2020 RCA, he relies on Section 2.2 of the Stock Award Agreement, "Employment or Service Rights." Section 2.2, however, provides that, subject to the terms of the RCA, Herriott's terms of employment shall not be affected by his participation in the Stock Award Plan, that Herriott's participation in the Stock Award Plan is not to be interpreted to form an employment agreement, and that the terms of any separate employment agreement to which the Associate is a party shall remain in effect and will control "to the extent that there are any inconsistencies with **this Agreement**." (emphasis added).  The term "Agreement," as used in Section 2.2, is a defined term in the Stock Award Agreement to mean "THIS PHANTOM STOCK UNIT AWARD AGREEMENT."  It does not refer to the RCA.  In other words, "the Restrictive Covenants and Other Obligations Agreement" ("RCA") (Schedule C) is a separately defined term and plainly not the "Agreement" or even a part of the "Agreement." Rather, the RCA is a wholly separate agreement. Nowhere in the Agreement or in the RCA does it state that the RCA is part of the Agreement. To the extent that Section 2.2 is triggered at all, and Willis argues that it is not, this Court should only examine alleged "inconsistencies" between the 2003 Employment Agreement and the Stock Award Agreement, not any alleged "inconsistencies" between the 2003 Employment Agreement and the RCA.[3] Accordingly, with there being no inconsistencies between the 2003 Employment Agreement and the RCA, defendant's argument fails.

---

[3] The Court indicated at the February 2, 2021 hearing that it was concerned, from the standpoint of the ethical and professional rules of conduct for attorneys, that counsel for Willis did not provide the Court with a copy of Herriott's

**2.      The New York Choice-of-Law Provisions in the RCAs and Controlling Decisions Preclude Consideration of California Labor Code §925.**

The second question posed by the Court in its February 3, 2021 Order is: "Does application of California Labor Code § 925 require, in the first instance, a determination under traditional choice-of-law principles that California law applies or, if the law's requirements are otherwise met, does it apply without regard to traditional choice-of-law principles (including but not limited to any choice-of-law provisions in an applicable contract)? Put differently — and as applied to this case — does §925 render the choice-of-law provisions in the RCAs void (or voidable), such that Ministers does not apply and traditional choice-of-law principles govern? Or do the choice-of-law provisions in the RCAs preclude consideration of § 925 altogether, such that Ministers applies and the choice-of-law provisions in the RCAs control?"

As outlined above, based upon the decision in <u>Ministers</u>, as well as upon the decisions cited above adhering to <u>Ministers</u> from the Second Circuit, from the district courts in this District, and from the New York State appellate courts, the choice-of-law provisions in the RCAs preclude consideration of California Labor Code §925 altogether.  <u>Ministers</u> and these other cases provide that the choice-of-law provisions in the RCAs control, and that the common-law conflicts-of-law public policy exception should not be considered.[4]

---

2003 Employment Agreement when Willis filed its motion. For the reasons stated herein, Herriott's 2003 Employment Agreement was not included because we believe it has no bearing on the issues raised in Willis' motion.  Additionally, the Employment Agreement was not attached because the "inconsistent" argument was raised for the first time by Herriott in his written opposition to Willis' motion, to which Willis did not have an opportunity to reply in writing.  In any event, counsel again apologizes to this Court if the Court believes that the Employment Agreement nevertheless should have been attached.

[4] Even if this Court were to consider the common-law conflicts-of-law public policy exception, the decision in <u>Ministers</u>, as well the decisions cited above adhering to <u>Ministers</u> from the Second Circuit, from the district courts in this District, and from the New York State appellate courts, dictate that this Court examine whether application of California law would violate some public policy *of New York*, not whether application of New York law would violate California public policy and/or the California Labor Code § 925.  Herriott does not, and cannot, fashion any such argument.

In other words, this Court cannot apply California Labor Code § 925 without first conducting a New York common-law conflicts-of-law analysis, which, as previously argued, it is not permitted to do. Thus, in order for this Court to find that California Labor Code § 925 applies, and renders the choice-of-law provisions in the RCAs void (or voidable), this Court would first have to find that Ministers does not apply, and that the decisions cited above adhering to Ministers from the Second Circuit, from the district courts in this District, and from the New York State appellate courts also do not apply, then find that a New York common-law conflicts-of-law analysis should be conducted, and then make an ultimate finding that based on such common-law conflicts-of-law analysis that California law, not New York law, should apply.

Given the narrowness of the two questions posed to the parties by this Court in its February 3, 2021 Order, and given the page limitation set by the Court for this supplemental brief, Willis respectfully requests an opportunity to submit a second supplemental brief in the event that this Court finds that Ministers and the numerous cases following it do not apply and that a New York common-law conflicts-of-law analysis should be conducted, so that Willis can submit written argument to the Court as to why New York law applies even under a common-law conflicts-of-law analysis, and why the requirements California Labor Code § 925 have not been met, in the event the Court finds after a common-law conflicts-of-law analysis that California law applies.[5]

---

[5] Defendant will not be able to meet his heavy burden to show that California law applies because New York has a substantial relationship to the parties in that Willis Re is a New York corporation with its principal place of business in New York, Willis Re employed Herriott as an Executive Vice President and National Sales Director, he was a member of the North American Executive committee, he had responsibilities for operations that included New York and throughout North America, he performed reinsurance brokerage services for Willis Re clients located in New York, Herriott came to New York at least twelve times per year to conduct business, WTW has offices in New York, and many of the clients of Willis Re and WTW are located in New York. Moreover, California's interest in this dispute is not materially greater than that of New York because, as set forth above, the contacts point toward New York, and, as the court held in Estee Lauder Cos. v. Batra, 430 F. Supp. 2d 158, 173-174 (S.D.N.Y. 2006) (citations omitted), New York has "a strong interest in protecting companies doing business here in keeping with: New York's recognized interest in maintaining and fostering its undisputed status as the preeminent commercial and financial nerve center of the Nation and the world. That interest naturally embraces a very strong policy of assuring ready access to a forum for redress of injuries arising out of transactions spawned here. Indeed, access to a convenient forum which dispassionately administers a known, stable, and commercially sophisticated body of law may be considered as much an attraction to conducting business in New York as its unique financial and communications resources."

Finally, Defendant's primary reliance on <u>Focus Fin. P'rs, LLC, v. Holsopple</u>, 2020 Del. Ch. LEXIS 320, 2020 WL 6266915, at *19 (Del. Ch. Oct. 26, 2020) for his California Labor Code Section 925 argument is misplaced because that opinion was made under Delaware law and not New York law. As this Court noted in its February 3, 2021 Order: "the *Focus Financial Partners* court appears to have applied Section 925 in connection with, or as part of, a traditional conflict-of-laws analysis under the *Restatement (Second) Conflict of Laws* - in other words, precisely the sort of analysis *Ministers* seems to indicate New York courts should not engage in when presented with a contract with a choice-of-law provision." Without a New York choice-of-law provision, and without controlling decisions like <u>Ministers</u>, and the decisions adhering to Ministers from the Second Circuit, from the courts in this District, and from the New York State appellate courts, the Delaware court in <u>Focus Financial Partners</u> engaged in a lengthy *Delaware conflicts of laws analysis* which led to its ultimate conclusion that the jurisdictional connections weighed decidedly in favor of California. The decision by the Delaware court under Delaware law in <u>Focus Financial Partners</u> clearly has no application in this case.  Again, under <u>Ministers</u> and the Second Circuit and New York state appellate court decisions cited herein, this Court should apply New York law without any traditional conflict of laws analysis, including any consideration of Section 925.

Dated: New York, New York
        February 8, 2021

                                       WHITE AND WILLIAMS LLP

By:      _____
                               Scott H. Casher, Esq.
                               George C. Morrison, Esq.
                               Times Square Tower
                               7 Times Square, Suite 2900
                               New York, New York 10036
                               *Attorneys for Plaintiffs*

-10-

26580288v.2